FREDERICK J. BAWDEN, Appellant, *vs.* WILLIAM H. TAYLOR *et al.* Appellees.

*Opinion filed June 21, 1912.*

1. GAMBLING—*when the statute prohibiting gambling in stocks does not apply.* Section 130 of division 1 of the Criminal Code, prohibiting gambling in grain or stocks, does not make it a crime for one engaged in an ordinary and legitimate business transaction to obtain a price on stocks as a part of such transaction or incident thereto, where there is no attempt to use the contract as a cover for a wager on the price of the stocks.

2. SAME—*when contract giving option on stock is not within the Criminal Code.* A stockholder in a publishing corporation who is negotiating for a sale of its publication to another company, and who will be able to make the sale only by purchasing the shares of stock owned by another stockholder, does not violate section 130 of division 1 of the Criminal Code by securing an option on such stock for a certain price within a specified period.

3. FIDUCIARY RELATIONS—*officer of corporation is not a trustee for stockholders as respects their stock.* Officers of a corporation are trustees for the stockholders as a body with respect to the business and property of the corporation under their control for the benefit of stockholders generally; but an officer is not a trustee for an individual stockholder as respects the latter's stock, and he may purchase such stock on the same terms and as freely as he

might if dealing with a stranger, and there is no confidential relation in such transaction.

4. SAME—*a confidential relation does not arise out of mere relationship by marriage.* The fact that the parties to a business transaction are brothers-in-law does not, of itself, raise a confidential relation, such as prevents their dealing with each other the same as though they were strangers.

5. FRAUD—*party claiming fraud by false representations must show he relied thereon.* One who seeks to set aside a sale of his stock in a publishing company to its president upon the ground that the purchaser made false representations as to the price for which he was to sell the journal published by the company, must not only prove that the false representations were made but that he relied upon them to his injury.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

CHILTON P. WILSON, (ALLEN F. REES, of counsel,) for appellant.

FRANK J. LOESCH, and T. J. SCOFIELD, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On March 4, 1908, Frederick J. Bawden, the appellant, and William H. Taylor, one of the appellees, were stockholders of the Taylor Publishing Company, organized under the laws of this State, engaged in the publication in Chicago of a trade journal called *The Engineer*. There were twelve hundred shares of capital stock, of which Bawden owned four hundred, Taylor four hundred and fifty-one, two employees forty-nine, and three hundred were in the treasury. On that day Bawden and Taylor entered into a written contract by which Bawden gave Taylor an option for ten days to purchase his four hundred shares for $66,250, payable as follows: $10,250 cash, $15,000 on

May 1, 1908, $25,000 one year from the date of transfer of the stock and $16,000 in two years from that date, with interest at six per cent on the deferred payments, for which Taylor was to give notes, secured by bonds of the Hill Publishing Company of New York, of the face value of the respective payments. Taylor availed himself of the privilege given by the contract and the stock was transferred to him on March 9, 1908, in exchange for cash, notes and bonds, as provided by the contract. The notes were paid, with the exception of the last one for $16,000, and on January 18, 1909, Bawden filed his bill in this case in the superior court of Cook county against Taylor and the Taylor Publishing Company, praying the court to set aside the transfer of the stock, to require Taylor to surrender and deliver up the certificate, and to render a decree against Taylor for such amount as might appear to be due from a full accounting for Bawden's proportion of four-ninths of the assets of the Taylor Publishing Company. The grounds alleged for relief were, that a confidential relation existed between Taylor and Bawden creating duties which were disregarded by Taylor in concealing the terms of a proposed sale of *The Engineer* to the Hill Publishing Company, and that Taylor was guilty of actual fraud in making false representations concerning the price that was to be received on such sale. The chancellor having heard the evidence of the parties, decided in favor of defendants and directed a decree to be drawn dismissing the bill for want of equity. Bawden then asked leave to amend his bill by alleging that the option given by him to Taylor was void under the Criminal Code, as a gambling contract. The chancellor refused leave to file the amendment and a decree was entered in accordance with his finding, dismissing the bill. An appeal was taken to the Appellate Court for the First District, where the decree was affirmed, and that court granted a certificate of importance and an appeal to this court.

The chancellor did not err in refusing leave to amend the bill as there was no element of a gambling transaction between the parties. Section 130 of division 1 of the Criminal Code, prohibiting gambling in grain or other commodity, stocks or gold, was not intended to and does not make it a crime for one who is engaged in an ordinary and legitimate business transaction to obtain a price on stocks as a part of such transaction or incident thereto and where there is no attempt to use the contract as a cover for a wager on the price of stocks. (*Osgood* v. *Skinner,* 211 Ill. 229; *Kantzler* v. *Bensinger,* 214 id. 589; *Bates* v. *Woods,* 225 id. 126.) Taylor was negotiating for a sale of *The Engineer* to the Hill Publishing Company, and would only be able to effect the sale if he secured Bawden's stock, and, that being a perfectly legitimate business transaction, he did not offend against the Criminal Code by obtaining from Bawden an agreement that he could have the stock for a certain price within a limited time.

The facts out of which it is claimed that a confidential relation arose are, that Taylor was the president and general manager of the Taylor Publishing Company, which published *The Engineer,* and that Bawden was a stockholder in the corporation and a brother-in-law of Taylor. The fact that Taylor was president and Bawden a stockholder did not create a confidential relation. The officers of a corporation are trustees for the stockholders as a body with respect to the business and property of the corporation, which is under their control and management for the benefit of stockholders generally, but an officer has no control over the shares of the individual stockholder and is not a trustee for such stockholder with respect to his stock. Officers of a corporation may purchase the stock of stockholders on the same terms and as freely as they might purchase of a stranger. (*Hooker* v. *Midland Steel Co.* 215 Ill. 444; Cook on Corporations,—5th ed.—sec. 320; 10 Cyc. p. 796.) There was no confidential rela-

tion arising out of the fact of relationship by marriage. Brothers-in-law do not uniformly trust and confide in each other in the management of their business affairs to such an extent as to establish the relation claimed, and in this case the evidence shows that Bawden distrusted Taylor, and had accused him of conduct at a stockholders' meeting held on January 7, 1907, which amounted to a flagrant breach of honor and showed a carefully planned scheme of malicious treachery. The correspondence between the parties shows quite conclusively that there was no relation of trust and confidence between the parties, but that Bawden was dealing for himself and looking out for his own interests.

The claim of Bawden for relief upon the ground of actual false representations and fraud rests upon allegations that Taylor represented to him that the sale to the Hill Publishing Company was to be for $150,000, when he knew, before the transaction was closed, that he would receive $225,000 in bonds of the Hill Publishing Company for the sale of *The Engineer.* The record is filled with correspondence and other matter having only the most remote connection with the transactions, but, giving to each item of evidence its due weight, the material facts are substantially as follows: *The Engineer* was a trade journal, and the Hill Publishing Company published a similar paper in New York, called *Power.* Bawden desired to sell his stock and made proposals to that end. In January, 1908, a broker in New York engaged in the business of selling trade journals was endeavoring to effect a sale of *The Engineer,* with its good will, subscription list, advertising contracts, etc., to the Hill Publishing Company. He was authorized to make, and did make, an offer to sell *The Engineer* for $225,000, but the offer was rejected and the Hill Publishing Company made a counter-offer of $150,-000, which was also rejected. There was correspondence between Taylor and Bawden about the offer of $150,000

as the amount that the Hill Publishing Company would pay, and out of that sum the broker was to have $6000 for commission. The offer of the Hill Publishing Company having been rejected, that corporation bought a trade journal called *Engineer's Review,* of Cleveland, Ohio, changed *Power* from a monthly to a weekly and cut the advertising rates. Taylor was in New York the latter part of February, 1908, and in consultation with the broker. It was a material part of the negotiations that he should agree not to publish a similar trade journal, and by his authority the broker, on February 29, presented to the president of the Hill Publishing Company a draft of an agreement, not dated or signed, for the purchase of *The Engineer* at $225,000, payable in bonds of the Hill Publishing Company,—$50,000 in one year, $50,000 in two years, $50,000 in three years and $75,000 in four years. There was also an agreement of Taylor to abstain from publishing a similar trade paper in the United States for twenty-five years. On that draft for an agreement the president of the Hill Publishing Company endorsed a statement that the broker was free to accept a proposition like that agreement on or before March 4, 1908. Bawden had asked $67,500 for his stock on February 25, 1908, and Taylor had replied that $65,000 was the best he could do. Bawden, who lived at Houghton, Michigan, came to Chicago and met Taylor on March 3, 1908, and after some negotiations a price of $66,250 was finally agreed upon. In pursuance of an agreement then made, the contract was signed the next day, on March 4, 1908. The broker had come from New York and on that day showed Taylor the draft of the agreement with the endorsement on it, and the broker telegraphed the president of the Hill Company · to come to Chicago. The president came, arriving there on March 5, and on that day the contract for the purchase of *The Engineer* was entered into, and the· Taylor Company was to give perfect title on or before March 11, 1908.

On the same day the board of directors of the Hill Pub-
lishing Company met and authorized the president to buy
*The Engineer* for $225,000 and that bonds be issued for
that purpose. When the option contract was made Baw-
den returned to his home, and on March 5 sent his certifi-
cate for four hundred shares of stock to the First National
Bank of Chicago, with directions to deliver it on receipt
of the cash payment and the notes and bonds provided for
in the contract, and stating that accompanying the bonds
would be a certificate from the secretary of the Hill Com-
pany certifying that they were the bonds of that corpo-
ration.

Bawden could only sustain his claim by showing, not
only that false representations were made, but that he re-
lied upon them, and while there had been correspondence in
which Taylor had mentioned $150,000 as the price which
the Hill Publishing Company was willing to pay, it appears
that when the option was given Bawden was informed that
*The Engineer* would not be sold at that price. Taylor and
his attorney who prepared the contract testified that Baw-
den then asked Taylor what he was going to get out of the
sale, and Taylor told him that he did not know, but unless
there was an offer of at least $200,000 *The Engineer* would
not be sold. Bawden denied the conversation, but judg-
ing from the record he must have been mistaken. The
attorney had no personal interest, and a conclusion by the
chancellor that when the contract was made Bawden was
not relying in any way upon the representation that there
would be a sale for $150,000 is fully justified. When the
transfer was made Bawden received as security for the
payment of Taylor's notes, bonds of the Hill Publishing
Company numbered from 151 to 206, consecutively, each
for $1000, and reciting that it was one of an issue of two
hundred and twenty-five. Bawden was to receive bonds
of the Hill Publishing Company, and their numbers and
the recital showed the amount of the issue. He did not

question the transaction in any way until July 20, 1908, when he wrote Taylor that information had come to him after the transaction which would indicate a much higher figure than $150,000 as the purchase price actually obtained. Afterward, in October, 1908, he forwarded to a bank in Chicago for collection Taylor's note for $25,000, accompanied by twenty-five of the bonds held as collateral, and received payment. Several months before that time he had information which would have naturally led him to inquiry and objection to the further performance of the contract if he had relied upon information that the sale was to be for $150,000 and had been defrauded by such representation. All these things tend to discredit the claim made by the bill.

There is no doubt that when the option contract was signed Taylor expected to get about the amount that was received for *The Engineer,* and that before the transaction was closed it was settled that the purchase price was, in fact, $225,000 in bonds of the Hill Publishing Company, but the evidence fails to establish the fact that he made false representations to Bawden. Taylor had a majority of the stock and was receiving a salary of $6000 a year in addition to dividends. He had a considerable and valuable experience in the line of business while Bawden had none, and the contract included an agreement on his part not to engage in the publication of a competing trade journal. Until the final endorsement on the draft for the agreement made by the president of the Hill Publishing Company on February 29, 1908, there had been no offer better than $150,000, and we would not be justified in concluding that Bawden was not informed, when he signed the contract, that *The Engineer* would not be sold unless there was an offer of at least $200,000.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*