## LITCHFIELD v. HENSON OIL CO.

No. 3883.    Opinion Filed December 21, 1915.

Rehearing Denied May 2, 1916.

(157 Pac. 137.)

1.  **CORPORATIONS—Stockholders—Transfer of Shares.** Section 1284, Snyder's Comp. Laws, 1909, provides that: "* * * Whenever the capital stock for any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by indorsement by the signature of the proprietor, or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares, and the date of the transfer."

2.  **SAME.** Shares of stock in a domestic corporation are personal property, and may be transferred by indorsement and delivery of the certificate; and, where such shares of stock when issued provide that they are transferable on the books of the corporation only on surrender of the certificate, such provision is binding upon the corporation, and it cannot reissue such stock, without the surrender of the original certificate, to a person in whose name they stand on the books of the company, and thereby escape liability to a person who holds such stock by assignment and delivery of the same. Such reissued stock is fraudulent and void as against the rights of the **bona fide** holder of the original.

3.  **SAME—Suit in Equity.** Having reached the conclusion that there was no evidence adduced at the trial tending to cast suspicion upon the **bona fides** of the transfer of the certificate herein involved from N., to whom it was issued, to the Exchange Land & Oil Company, or from the Exchange Land & Oil Company to the plaintiff herein, it follows the latter may prosecute a suit in equity to compel the corporation issuing said stock to transfer the same to him upon its books.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Suit in equity by R. S. Litchfield against the Henson Oil Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*J. B. Tomlinson,* for plaintiff in error.

*L. A. Rowland* and *James A. Veasey,* for defendant in error.

KANE, C. J. This was a suit in equity, commenced by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, for the purpose of securing a decree compelling the defendant in error to recognize the plaintiff in error as the owner of 200 shares of its capital stock and to account to him as such stockholder. Upon trial to the court the relief prayed for was denied; whereupon this proceeding in error was commenced for the purpose of reviewing the action of the trial court.

There was considerable evidence adduced at the trial, but after it is all analyzed the following material facts stand forth practically undisputed: The Henson Oil Company, the defendant herein, was organized as a corporation in 1907, with a capital stock of $25,000. Immediately upon its organization, a call was made upon the stockholders to pay to the treasurer of the company at once the par value of their stock subscriptions. At the annual meeting of the board of directors on December 2, 1907, two of the stockholders failed to respond to the call for the payment of their stock; whereupon a stock certificate for 375 shares, being stock certificate No. 1, was issued to W. L. Norton. On January 15, 1908, Norton surrendered stock certificate No. 1 and received in lieu thereof certificate No. 6 for 200 shares. It is this certificate that is in controversy. Of the legal effect of

this part of the transaction counsel for defendant say: "Unquestionably the stock belonged to Norton, and not to the corporation." It further appears that Norton not only owned a substantial amount of stock in the defendant company, but he was also president, general manager, and owner of 75 or 80 per cent. of the stock of another corporation, the Exchange Land & Oil Company, organized under the laws of New York, and president of the American National Bank of Bartlesville.

In January, 1908, the Exchange Land & Oil Company passed a resolution authorizing the purchase of 200 shares of the capital stock of the defendant company at an agreed price of $6,500, and provided means to pay therefor. Shortly thereafter the stock of the defendant company theretofore issued to Norton was transferred by him by assignment in due form to the Exchange Land & Oil Company. Shortly after the transfer of Norton's certificate of stock, as above set out, it was forwarded to the secretary of the defendant company to be transferred upon the books of the company to the Exchange Land & Oil Company. The secretary of the defendant company refused to transfer the certificate, and returned the same to the Exchange Land & Oil Company with a statement to the effect that a transfer thereof would be contrary to the laws of the State of Oklahoma. Thereafter, on October 10, 1910, at a meeting of the board of directors of the defendant company, Norton caused the following entry to be made upon the transfer book of the defendant company in relation to the certificate of stock in controversy, to wit:

"This certificate No. 6 has never been pledged by me, but is out of my possession, and I hereby apply for

its reissuance and direct that it be reissued to L. A. Rowland."

Thereupon certificate No. 6 was reissued to L. A. Rowland, as directed by Norton. The purpose of this reissuance was to secure a debt owing by Norton to the defendant company.

R. S. Litchfield, the plaintiff herein, a banker of Independence, Kan., held as collateral security certain stock of the Exchange Land & Oil Company. The debt not being paid, he foreclosed his lien on this stock and had it transferred to himself and his associates. About this time, to wit, on the 10th day of January, 1911, the Exchange Land & Oil Company, by its board of directors, passed a resolution selling the stock transferred to it by Norton as above stated to Litchfield for the consideration of $500. These, in our judgment, are all the facts material to a decision in this cause.

The defendant company claims the stock by virtue of its reissuance to Rowland, who is holding it as collateral security for the company, and the plaintiff claims it by purchase and transfer from the Exchange Land & Oil Company. We think the evidence adduced was sufficient to entitle the plaintiff to the relief prayer for. Section 1284, Comp. Laws 1909, provides that:

"* * * Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by indorsement by the signature of the proprietor, or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom

transferred, the number or designation of the shares, and the date of the transfer."

The certificate in controversy provided that:

It is "transferable only on the books of the corporation by the holder hereof in person, or by attorney, upon surrender of this certificate properly indorsed."

In *First Nat. Bank v. Stribling*, 16 Okla. 41, 86 Pac. 512, it was held:

"Shares of stock in a corporation organized under the laws of the Territory of Oklahoma are personal property, and may be transferred by indorsement and delivery of the certificate; and, where such shares of stock when issued provide that they are transferable on the books of the corporation only on surrender of the certificate, such provision is binding upon the corporation, and it cannot reissue such stock without the surrender of the original certificate to a person in whose name they stand on the books of the company, and thereby escape liability to a person who holds such stock by assignment and delivery of the same. Such reissued stock is fraudulent and void as against the rights of the *bona fide* holder of the original."

Applying the rule laid down in this case to the case at bar, it would seem that the transfer of the stock "by indorsement by the signature of the proprietor" (Norton) to the Exchange Land & Oil Company vested the title in the stock assigned in that company; and, of course, the subsequent assignment thereof to the plaintiff had the effect of vesting title thereto in him as in the case of ordinary personal property. It is well known that stock certificates of all kinds have been construed in such a way that they have become the basis of commercial transactions in all the large cities in the country, and are sold in open market the same as other securi-

ties; and, whilst they are neither in the form or character of commercial paper, they approximate it as nearly as practicable. The reissuance of the stock to Mr. Rowland to be held as collateral security for the defendant company was not an ordinary business transaction, nor can we find any authorization therefor in the law. On the contrary, the Oklahoma case above cited holds that:

"Such reissuance of the stock is fraudulent and void, as against the right of the *bona fide* holder of the original."

There is absolutely no evidence in the record which reflects unfavorably upon the *bona fides* of the sale from Norton to the Exchange Land & Oil Company, nor from it to the plaintiff. There are two circumstances disclosed by the evidence which perhaps ought to be noticed on account of the importance which counsel for the respective parties seem to attach to them. It is shown that shortly after the assignment of the certificate to the Exchange Land & Oil Company Norton drew upon it three drafts aggregating $4,500 in favor of the defendant, which were paid, and that the Exchange Land & Oil Company also paid the further sum of $2,000, or a total of $6,500. On March 28, 1908, the defendant company remitted to the Exchange Land & Oil Company $3,000, on June 16, 1908, an additional sum of $2,000, and on December 3, 1908, an additional sum of $2,789.26.

It is contended on the part of the plaintiff that the former transaction furnishes evidence of the consideration paid by the Exchange Land & Oil Company for the certificate of stock assigned to it by Norton, whilst on the part of the defendant it is contended that a fair inference to be drawn from both transactions is that the $6,500 transaction constituted a loan from the Exchange Land

& Oil Company to the defendant company which was subsequently paid by the latter items. In our judgment, we may assume that the contention of counsel for defendant is right, and that the trial court so found, and yet the defendant will be in no better situation. Even if we disposed of these transactions in accordance with its theory, we are unable to see how the conclusion heretofore reached, based on the former statement of facts, would be affected. It is conceded that originally the stock was issued to Norton, and that he thereby became the owner thereof; that in due form he assigned and transferred the same to Exchange Land & Oil Company. If we concede that the $6,500 transaction above mentioned was a loan to the defendant company and did not constitute the consideration for the assignment, still it does not follow that the Exchange Land & Oil Company did not pay Norton for the stock. Indeed, finding the stock duly and regularly assigned to the Exchange Land & Oil Company, and in its possession, without any attendent suspicious circumstances, the presumption would be the other way.

Having reached the conclusion that there was no evidence adduced at the trial—at least none which has been called to the attention of the court by counsel in their briefs—tending to cast suspicion upon the *bona fides* of the transfer of the certificate herein involved from Norton, to whom it was issued, to the Exchange Land & Oil Company, or from the Exchange Land & Oil Company to the plaintiff herein, it follows that the latter may prosecute a suit in equity to compel the corporation issuing said stock to transfer the same to him upon its books. Clark & Marshall on Corporations, p. 1820; *Western*

*Union v. Davenport*, 97 U. S. 369, 24 L. Ed. 1047; *Barstow v. Savage Min. Co.*, 64 Cal. 388, 1 Pac. 349, 49 Am. Rep. 705.

For the reason stated, the judgment of the court below is reversed, and the cause remanded, with directions to render judgment in accordance with the views herein expressed.

All the Justices concur.