## PETTY v. KNIGHT-PETTY MERC. CO. et al.

No. 11421—Opinion Filed Nov. 6, 1923.

**1.   Corporations — Sale of Unissued Stock — Notice to Stockholders.**

Where the by-laws of a corporation provide that five days notice shall be given to all shareholders of the intention of the

officers of the corporation to sell the un-issued shares of stock of said corporation, the fact that one of the stockholders received notice only four days prior to the sale will not invalidate the sale, when the right of no one is shown to have been prejudiced, and the complaining stockholder admits that he had no intention or desire to purchase any of the shares of stock offered for sale.

**2. Corporations — Failure to Adopt By-Laws, Etc. — Right of Officers to Complain.**

A stockholder, or member of a corporation, who was named as president of the corporation in its charter and was the active manager of the business of said corporation for a long period of time following the organization, will not be heard to complain of the fact that no by-laws were adopted, no annual meetings held, and no directors elected as required by law, until immediately following his voluntary resignation as president and manager, in the absence of any fraud or misconduct on the part of the stockholders or members of such corporation, perfecting the organization.

**3. Corporations — Certificate of Stock —Necessity.**

"From the fact that a certificate of stock is not the stock itself, but merely evidence of the stockholder's rights, it follows that in the absence of provisions to the contrary the issue of certificates of stock is not at all necessary, either to the existence of a joint-stock corporation or to make one a stockholder in such a corporation, for one may be a stockholder without the formal written evidence of his rights. * * *" 5th Fletcher, Cyc. on Corporations, section 3427.

**4. Same — Transfer by Shares — Record — Rights of Legal Holder.**

Under section 1237, Rev. Laws 1910, corporate shares of stock are personal property, negotiable, and must be transferred by the owner by indorsement and delivery, and is valid between the parties whether the transfer is entered upon the books of the corporation or not, and the legal holder thereof is entitled to participate in the organization and conduct of the corporation, as a stockholder or member of such corporation.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Cleveland County; F. B. Swank, Judge.

Action by Clarence Petty against Knight-Petty Mercantile Company, D. F. Knight, R. F. Ellinger, and Mrs. A. E. Ellinger. Judgment for defendant, and plaintiff appeals. Affirmed.

W. L. Eagleton, Rittenhouse & Rittenhouse, and Wilson, Tomerlin & Threlkeld, for plaintiff in error.

Williams & Luttrell, J. B. Dudley, and Kent W. Shartel, for defendants in error.

Opinion by JONES, C. This case was instituted in the district court of Cleveland county by plaintiff in error against defendants in error, and was tried before the Hon. F. B. Swank, judge of said court, without intervention of a jury on the 26th day of November, 1919. At the close of the introduction of evidence on the part of the plaintiff, defendants interposed a demurrer to the evidence, which was sustained by the court, and judgment rendered for the defendants.

Motion for a new trial was duly filed and overruled; plaintiff in error, plaintiff below, excepted, and duly perfected an appeal to this court. The pleadings disclosed that plaintiff in error, Clarence Petty, and his son, Curtis Petty, and the defendants D. F. Knight and R. F. Ellinger organized the Knight-Petty Mercantile Company, a corporation, in January, 1917, with an authorized capitalization of $25,000, $12,000 of said stock was subscribed and issued; $3,000 to the plaintiff, Clarence Petty; $4,000 to the defendant Knight; $1,000 to Curtis Petty, and $4,000 was issued in the name of Clarence Petty for the use and benefit of the defendant R. F. Ellinger, and was duly assigned and transferred to the said Ellinger by the plaintiff, Petty, immediately after same was issued, and it is alleged that the defendant R. F. Ellinger desired that his interest in the corporation be not shown on the books. Thereafter the plaintiff, Clarence Petty, purchased the stock of his son, Curtis Petty, and is now and at all times during the pending of this cause of action the owner of $4,000 of capital stock of said corporation, and was the president and manager of said corporation from the time of its creation until about March 1, 1919, and after his resignation the defendant Knight took charge of the business.

There is a serious conflict of evidence as to the condition of the business at that time. Plaintiff in error contends that the business showed a surplus of over $19,000 and that it was in good condition, but this statement is based on the invoice taken in which all the goods on hand were invoiced at cost and carriage and all notes and accounts on hand were invoiced at full face value. After the defendant Knight took charge of the business he had an in-

voice taken, which showed an entirely different state of facts; the surplus was reduced to $9,000, and all of the assets of the company were valued at $21,000, whereas under the invoice taken by the plaintiff, Petty, the total aggregated over $31,000, and it seems that at the time Knight took charge of the business there was an outstanding indebtedness of about $16,000. The record discloses that the corporation had never been perfected, in that no by-laws had ever been passed governing the condition and control of said corporation, and that in June, after the defendant Knight had taken charge, he called a meeting of the stockholders for the purpose of perfecting an organization, and at which time notice was given to all stockholders. The plaintiff, Petty, failed to appear or attend the meeting and the defendant Knight and R. F. Ellinger organized and elected a board of directors, and finding it for the best interest of the corporation, offered for sale the remaining $13,000 of stock, and notified all the stockholders, which consisted of Knight, R. F. Ellinger, and the plaintiff, Petty, of their intention to sell same at par and in conformity to the by-laws governing said institution, and the law controlling corporations, as they understood it. They gave the stockholders a preference right to buy their proportionate share of the stock unsold at par. On the day designated for this purpose the directors met after due notice had been given to the plaintiff in error, Petty, and proceeded to sell and distribute the stock. The plaintiff in error, Petty, failed to attend the meeting or make any offer to purchase any of the shares of stock. The records of the corporation show that R. F. Ellinger purchased 50 shares of the remaining unissued authorized capital stock, Knight 40 shares, and Mrs. R. F. Ellinger 40 shares, which constitutes all of the shares unissued of said company. And in September following these transactions, the plaintiff in error, Clarence Petty, instituted this suit asking for the dissolution of the corporation and for the appointment of a receiver to take charge of and conduct said mercantile business, and attacks the validity of the sale of the $13,000 of stock, which was purchased by the defendants, upon the theory that the purported meeting and organization of the board of directors and the conduct of the business by the defendants in error was illegal and unauthorized. The defendants in their answer generally deny all the matters set up by plaintiff and aver that their acts and conduct were legal and authorized by law, and that the sale of the remaining unissued shares of stock was necessary and entirely justified

by reason of the condition of the business, and that the plaintiff in error, Petty, had due notice of all the transactions, and that as a member of said corporation he is bound by the acts of the members who hold more than two-thirds of the capital stock of said corporation. To which answer plaintiff files a reply and generally denies all the matters set up as a defense to his original cause of action. Plaintiff in error assigns various assignments of error, but apparently from his brief relies very largely on the contention that the acts and conduct of the defendants were unauthorized by law in the management and control of the corporation, and that the notice given plaintiff in error of the intention to sell the remaining stock of the corporation unissued was insufficient, and contends that on June 10, 1919, he was served with notice bearing date of June 9th advising him that said stock would be sold within five days from the date thereof, June 9, 1919, only giving him four days in which to prepare for the purchase of said stock from the date of actual service of said notice, whereas a resolution passed by the board of directors of the Knight-Petty Mercantile Company authorizing the sale of said stock provided that its unissued capital stock shall be sold at par with the understanding that the present stockholders are to be given five days' notice of the sale of said stock, and the right and privilege to purchase their proportionate share within said time, and upon their failure to exercise said right within said time, said stock may be sold to any purchaser at not less than par.

This contention of plaintiff in error might be meritorious were it not for the fact that upon the trial of the case the plaintiff, Petty, made answer to questions propounded by the court as follows:

"Mr. Petty, if you had been at that meeting when the stock was sold, did you intend to buy some of it? A. No, sir; I wouldn't have bought it. Q. Well, did you want any of it? A. No, sir, not with the row between us. Q. If you had the money, would you have bought any of it? A. No, sir."

So, in view of the fact that he had no desire or intention of purchasing any of the stock, we think, as between the plaintiff and defendants, that the contention is not well taken. His right or interest was in no wise prejudiced, and in so far as he was personally concerned the notice as given was amply sufficient for all intents and purposes.

Plaintiff in error contends that R. F. Ellinger had no right to act or to partici-

pate in the organization of the corporation, for the reason the book record did not show that he had any interest or was the owner of any shares of stock. But the fact that he, Ellinger, paid for $4,000 worth of shares of stock which was originally issued to Clarence Petty, and same was duly assigned and transferred to the said Ellinger immediately after it was issued, which is not disputed, we think, constituted Ellinger a legal stockholder and entitled him to participate in the organization and conduct of the business.

Section 1237, Rev. Laws 1910, provides that:

"All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary. Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued such shares of stock are personal property and may be transferred by indorsement by the signature of the proprietor, or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares and the date of the transfer."

The case of First National Bank of Sulphur Springs, Texas, v. J. B. Stribling et al., 16 Okla. 41, 86 Pac. 512, upholds the validity of the transfer of stock duly issued; wherein the court said in referring to the language of the section heretofore quoted:

"This language makes such shares of stock negotiable by indorsement and vests in the transferree a complete title to the paper transferred. No one else has any power over it or right in it."

And the same rule is announced in the case of Haynes v. Brown, 18 Okla. 389, 89 Pac. 1124, Litchfield v. Henson Oil Co., 53 Okla. 550, 157 Pac. 137; and under these authorities, we think that the transfer of the stock by Petty to Ellinger is clearly binding between them, and that Petty cannot be heard to complain by reason of the fact that Ellinger had never surrendered the shares, and asked that they be transferred on the books of the corporation.

Plaintiff in error further complains of the manner in which the corporation was organized, after his resignation as president and manager of the mercantile company. This contention, we think, is without merit. The record discloses that the articles of incorporation were signed by Petty, plaintiff in error, his son, Curtis

Petty, and one of the defendants in error, Knight, who were named in the charter as the officers of such incorporation, and, under the law, remained as such until the election and qualification of their successors, as provided in sections 1223 and 1227, Rev. Laws 1910. The fifth paragraph of section 1223 provides that articles of incorporation shall set forth—

"The number of its directors or trustees and the names and residences of such of them who are to serve until the election of such officers and their qualifications."

And the case of Cummings v. State, 47 Okla. 627, 149 Pac. 864, wherein the court held by section 1227, Rev. Laws 1910:

"A person signing articles of incorporation and their associates and successors shall be a body politic and corporate by the name and for the purposes stated in said articles. * * *"

The organization in this case was not perfected until after the resignation of Petty in March, 1919. In April thereafter a meeting was duly called and on the 15th day of April, 1919, Ellinger and Knight, who were the owners of two-thirds of the stock sold, appeared at the meeting under the call and of which notices had been given to all shareholders, and proceeded to elect officers and directors for said company and to adopt by-laws as is provided in section 1246, Rev. Laws 1910, which provides, among other things:

"That the assent of stockholders representing the majority of all the subscribed capital stock is necessary to adopt by-laws if they are adopted at a meeting called for that purpose".

—and further provides:

"The written assent of holders of two-thirds of the stock shall be effectual to adopt a code of by-laws without the meeting for that purpose."

On the 16th day of June, 1919, a special meeting of the board of directors was held at which time they ratified and approved the adoption of the by-laws, the sale of the stock, and the election of the board of directors, and all transactions which had occurred at previous meetings of the board.

The plaintiff in error, Petty, had due notice of this meeting, but did not attend, and we think that if there was ever any question as to the validity of the acts complained of by reason of the fact that Ellinger was not entitled to participate in the organization of the company, thus ratified and approved at the time when he had become the record owner of shares of stock, this would have corrected the defects complained of.

Plaintiff in error next complains of the sale of the unissued stock, but under the provisions of section 1235, Rev. Laws 1910, his contention is without merit. The section provides:

"After the Secretary of State issues the certificates of incorporation, the directors named in the articles of incorporation must proceed in the manner specified or provided in their by-laws, or if none, then in such manner as they may by order adopt to open books of subscription to the capital stock then unsubscribed and to secure subscriptions to the full amount of the fixed capital, and to collect the same."

Under this provision of the law, and in view of the fact that the mercantile company was then indebted in the sum of $16,000, we cannot see any merit in the complaint as to the sale of the unissued shares of stock.

In the case of Cross v. Farmers Elev. Co., 31 N. D. 116, 153 N. W. 279, 4 L. R. A. 13, the court, in passing upon a very similar statute said:

"The policy of the incorporation laws of the state of North Dakota is that the capital stock of a corporation shall be fully subscribed as soon as possible and when such capital stock is sold at par, the stockholder has no grounds for complaint, even though the additional money may not be absolutely necessary to the existence of the corporation."

So we think the defendants in error were clearly within their right in the sale of the unissued shares of stock. Many other authorities are cited but we deem those heretofore referred to sufficient. Plaintiff in error cites the case of Bently et al. v. Zelma Oil Co. et al., 76 Okla. 116, 184 Pac. 131, as an authority in support of his contention that the sale of shares of stock was unauthorized, but from an examination of that case we find that it was the sale of personal property other than shares of stock by certain shareholders of the corporation to the officers and directors of same and that it was clearly a fraudulent transaction and to the detriment of all shareholders, only and except these who were selling worthless oil properties to the corporation, an entirely different proposition from the one with which we are concerned and none of the authorities cited by plaintiff in error are applicable to the case at bar.

The record in this case discloses that a very complete set of minutes and records was kept of all proceedings had and resolutions passed at all the meetings of the board of directors, and we are of the opinion that there has been a substantial compliance with the law governing the organization and conduct of the corporation, and that the evidence adduced at the trial of the case on the part of plaintiff wholly fails to substantiate the allegations of plaintiff's petition praying for a dissolution of the corporation, and for the appointment of a receiver, and that the court's action in sustaining the demurrer to plaintiff's evidence was not error, and we therefore recommend that the case be affirmed.

By the Court: It is so ordered.