**WHITEHEAD et al v. GORMLEY et al.**

No. 15221—Opinion Filed Jan. 12, 1926.

Rehearing Denied March 30, 1926.

**1. Replevin — Stock Certificate Entrusted to Attorney—Demand Prerequisite to Suit.**

Where G. places a certificate of stock in the hands of W., who is acting as G.'s attorney, and no definite date is fixed whereon W. is to return the certificate to G., a demand by G. or his agent for the return of the certificate is necessary before a cause of action accrues to G.

**2. Limitation of Actions—Replevin—Demand Necessary to Start Statute.**

Where a demand is necessary to perfect the right of action, the statute of limitations runs only from the time of demand by the plaintiff, and the refusal of the defendant to deliver the certificate in response to such demand.

**3. Corporations—"Certificate of Stock."**

A certificate of stock is a written instrument signed by the proper officers of the corporation, stating or acknowledging that the person named therein is the owner of a designated number of shares of its stock. It is not the stock itself, but merely written evidence of ownership thereof, and of the rights and liabilities resulting from such ownership. It is merely a paper representation of an incorporeal right, and stands on the footing similar to that of other muniments of title.

**4. Appeal and Error—Questions of Fact—Conclusiveness of Verdict.**

It is the established rule in this state that where there is any evidence that reasonably tends to support the verdict, it will not be disturbed on appeal, but where there is an entire failure of any evidence to support the verdict, the verdict and judgment will be set aside.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by Earl Gormley against J. E. Whitehead and the First National Bank of Oklahoma City, alleging "retention" by the defendants of a certificate of stock representing ownership of 6,000 shares of stock in the Osage Oil & Refining Company, which company thereupon intervened. Judgment for plaintiff, and against J. E. Whitehead and the Osage Oil & Refining Company, and the defendant Whitehead and the Osage Oil & Refining Company appeal, Reversed and remanded.

W. N. Redwine, for plaintiffs in error.

J. C. Nelms and Charles H. Garnett, for defendants in error.

Opinion by RUTH, C. In this opinion Earl Gormley will be designated as plaintiff, J. E. Whitehead as defendant, the First National Bank as the bank, and the intervener, Osage Oil & Refining Company, as "the company."

On October 3, 1922, plaintiff filed his action against the defendant and the bank and the petition alleges that on March 15, 1918, plaintiff deposited with the bank "Certificate No. 301, for 6,000 shares of the capital stock of the Osage O. and R. Co."; that the certificate was unindorsed and was to be held by the bank until January 2, 1919, and was to be returned to plaintiff, by virtue of a written agreement, "on or after January 2 1919," and the bank issued its receipt therefor, wherein it was agreed the bank would return the certificate upon surrender of the receipt; that about October 1, 1918, the bank, without the knowledge or consent of plaintiff, or without permission or authority, delivered the certificate to the defendant. and took his receipt therefor, and defendant "retains" same; that demand has been made upon both defendant and the bank for the return of the certificate, but return has been refused. The petition then alleges as follows:

"That said certificate was on the said 15th day of March, 1918, and ever since has been and is now of a reasonable value of $6,000, and that by reason of said breach of contract and wrongful and fraudulent acts and conduct of the defendants as herein above set forth, the plaintiff has been damaged in the sum of $6,000 with interest at the rate of 6 per cent. per annum from the 1st day of October, 1918." and prays judgment.

There was a second cause of action for the wrongful retention of shares of stock, but this was abandoned and dismissed by plaintiff.

The defendant filed answer consisting of a general denial; a plea of the statute of limitations; and for further answer stated that even if it be true that plaintiff had possession of the said certificate and the same was deposited with the bank, the certificate was void for that the company was incorporated under the laws of the state of South Dakota, and section 8, art. 17, of the Constitution of South Dakota provides:

"No corporation shall issue stocks or bonds except for money, labor done, or money or property actually received," etc.

That it is void for the further reason that the statutes of South Dakota provide (Rev. Code 1919, sec. 8775):

"All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary, and may provide in their by-laws for issuing certificates prior to full payment, under such restrictions and for such purposes as their by-laws may provide. * * * Whenever * * * certificates, therefore, are issued, such shares of stock are personal property, and may be transferred by indorsement by the signature of the owner or his attorney or legal representative and delivery of the certificate," etc.

That the certificate is further wholly void and of no force and effect because the transactions complained of all occurred in the state of Oklahoma, and the Constitution of Oklahoma provides (art. 9, sec. 39):

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof. * * *"

Defendant's answer then states that the certificate was issued without any consideration therefor, and without the par value thereof having been paid by plaintiff in money, labor done, or money or property actually delivered. The answer further sets forth that the bank was authorized to deliver the certificate to the defendant, and defendant was fully authorized to receive and hold the same, as he was at all times throughout the transactions acting for the Osage Oil & Refining Company, and for the plaintiff, Earl Gormley, and had full authority from the company and plaintiff to receive and retain the certificate, and the company had the right to retain the stock under article 1, section 5, of its by-laws until the shares of stock represented by the certificate were fully paid for; that article 1, section 7, of the by-

laws of the company provided the company should have a lien upon any and all certificates of stock until the stock was fully paid for, etc.; that the certificate was issued to plaintiff in consideration of further services by plaintiff, who had refused to perform the services, and the consideration had wholly failed. Defendant then alleges that the Osage Oil & Refining Company is a necessary party, and prays the company be made a party and be required to file its answer herein, and defendant tenders the certificate into court.

The company filed its petition in intervention, in which it alleges that certificate No. 310 was issued by the company, but was never delivered to plaintiff, but was deposited in the bank by the company, and the receipt taken in the name of the plaintiff, but by the company, and the receipt of the bank was given to the company in the name of plaintiff and was returned by the company to the bank, and the bank upon delivery of the receipt delivered the certificate to the company, and the certificate was the property of the intervener and was never delivered to plaintiff, and plaintiff never had any right, title or interest therein. The intervener then tenders the certificate into court, that the title and ownership may be determined, and pleads the Constitution and laws of the states of Oklahoma and South Dakota, and the by-laws of the company as set up in the answer of J. E. Whitehead, president of the intervener company; and prays the said certificate be canceled.

Plaintiff for reply alleges collusion between the defendant and the bank, and fraud in the delivery of the certificate, and that he did not discover the fraud until December 17, 1921, when he made demand upon the bank for the certificate, and its return was refused. The cause was tried to a jury. and a verdict returned in favor of the plaintiff and against the defendants Whitehead and the Osage Oil & Refining Company, and these defendants bring this case here upon petition in error and case-uade for review.

Thirty-one specifications of error are assigned in the defendants' brief, but it will not be necessary to consider all the propositions presented. The first error assigned is that the action was barred by the statute of limitations, and the court should have so held. Defendants admit in their brief that if Whitehead was representing Gormley and holding the certificate for him and for his benefit, then Gormley could not sue for possession of the stock or certificate until demand was made and delivery refused. We think this is determined by the

defendant's answer, wherein he alleges as follows:

"That this defendant was fully authorized to receive and hold said certificate, for the reason that this defendant was, throughout the whole transaction, acting for the said corporation, the Osage Oil & Refining Company, and for the plaintiff, Earl Gormley, and each and all of the other parties interested in the deposit of the shares in said bank at the time, and that this defendant did receive said stock from said bank with authority of plaintiff," etc.

The evidence amply sustains the allegations of the answer. It appears the company was organized under the laws of the state of South Dakota, with an authorized capital of $2,000,000, divided into 2,000,000 shares of a par value of $1 each, and the certificate issued in Gormley's name describes him as the owner of 6,000 shares, and is dated January 18, 1918. On March 22, 1918, plaintiff and 13 other stockholders agreed to keep their stock off the market and deposit their certificates in the bank, taking interim receipts therefor, and these certificates were to be redeemable at any time on or after January 2, 1919, by surrender of the receipts. This agreement was for the purpose of enabling the company to sell its treasury stock before these 14 stockholders placed their stock on the market. Pursuant to this written agreement, Whitehead, who was president of the company, personally deposited with the bank certificates representing 524,800 shares of stock, and received the interim receipts, and when he withdrew the certificates, he receipted for same in the name of all the stockholders. "By J. E. Whitehead—Their Attorney." Neither the certificate nor receipt appears to have been in the possession of Gormley, and all the evidence proves conclusively that Whitehead was acting as agent and attorney for Gormley and the other certificate holders, and this being true, Whitehead's retention of the certificates was not wrongful, and Gormley could not maintain an action for the delivery of the certificate until he made a demand therefor and delivery was refused. This demand was made and delivery refused on December 17, 1921, and this suit was filed December 3, 1922.

In City of Guthrie v. Harvey Lumber Co., 9 Okla. 464, 60 Pac. 247, this court said:

"When a demand is necessary to perfect the right of action, the statute runs only from the time of the demand." See Board of Commissioners v. Tandley (Kan.) 59 Pac. 599.

Section 4657, R. L. 1910 (section 185, C. O. S. 1921) provides:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods. * * * Third. Within two years: An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to another, not arising on contract and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

The evidence discloses plaintiff did not know Whitehead had surrendered the receipt and secured the certificate until December 17, 1921, and if he had known it, we cannot see that this knowledge would alter the plaintiff's rights, unless he knew Whitehead was claiming some adverse interest therein and thereto. It would be an absurdity to hold that every client must, within two years of depositing with his attorney personal property, demand its return or be forever barred in asserting a claim therein. Persons have a right, when depositing valuable papers in the hands of their attorney, to believe the same will be carefully preserved and returned to them on demand, provided the attorney avows no adverse interest therein, and upon refusal to deliver, a right of action accrues and the statute of limitations runs from the date of such refusal, and the plaintiff in the instant case having made demand on December 17, 1921, when delivery was refused, and having filed his action within 13 months thereafter, the statute of limitations was not available as a defense.

Defendants demurred to plaintiff's evidence, and at the conclusion of all the evidence requested an instructed verdict. The demurrer was overruled and the request denied, and exceptions were saved, and it becomes the duty of this court to examine the whole record for the purpose of determining whether there is any evidence reasonably tending to support the judgment. Plaintiff in his petition does not allege defendant has converted the certificate to his own use, but merely alleges defendant obtained the certificate from the bank, and "retains" it in his possession, and that the "certificate" was on March 15, 1918 and ever since has been and is now of the value of $6,000. The "certificate" is only an evidence of the ownership of a certain number of shares of stock. It would not be transferred except by indorsement on the certificate by the plaintiff himself. The certificate is in evidence, and it has never been indorsed by the defendants or either of them as attorney for plaintiff or otherwise. It has never been mutilated or destroyed, but

is in the same condition as when defendants received it from the bank. The shares of stock represented by the certificate still repose in the company's safe, and the books of the company disclose the stock is still carried in the name of the plaintiff. Defendant claims that the stock was to be delivered for services to be performed by plaintiff, which services were never performed, and tenders the certificate and shares of stock into court to abide the decision of the court upon the controverted questions. The plaintiff nowhere alleges or proves, or attempts to prove, that he could have disposed of the shares of stock to an advantage, and was prevented from so doing by the act of retention, and was thereby damaged. In fact, he never appears to have cared to exercise any control over this certificate from March 18. 1918, until December 17, 1921, and on October 3, 1922, he filed his action and attempted by judicial decision, to sell his shares of stock to the defendant at par value, plus interest at the rate of six per centum per annum from the 15th day of March, 1918.

The ownership of the shares of stock still being in the plaintiff, and he alleging that they have always been and are now of the value of $6,000, and the same being tendered into court, upon what theory can the plaintiff claim he has suffered aught but nominal damages? He is suing here for the value of the certificate, placed at $6,000, but the certificate has no such value; it is but an evidence of his title to or ownership of certain shares of stock.

In 14 C. J. 478, the author says:

"A certificate of stock may be defined as a written instrument signed by the proper officers of the corporation, and usually under the seal of the corporation, stating or acknowledging that the person named therein is the owner of a designated number of shares of its stock. It is not the stock itself, but merely written evidence of the ownership thereof and of the rights and liabilities resulting from such ownership. It is merely a paper representative of an incorporeal right, and stands on a footing similar to that of other muniments of title." See 14 C. J. p. 481, section 710.

In Burr v. Wilcox, 22 N. Y. 551, the court says:

"The issuing of the original certificates is in no sense a transfer of stock. The interest of the party to whom they are issued is the same before as after such issue. The certificate is simply a written acknowledgment by the company of the interest of the subscriber in its property and franchises."

In Petty v. Knight-Petty Mercantile Co., 93 Okla. 187, 220 Pac. 835, this court said:

"From the fact that a certificate of stock is not the stock itself, but merely evidence of the stockholder's rights, it follows that, in the absence of provisions to the contrary, the issue of certificates of stock is not at all necessary, either to the existence of a joint-stock corporation or to make one a stockholder in such a corporation, for one may be a stockholder without the formal written evidence of his rights." Citing 5 Fletcher, Cyc. on Corporations, section 3427.

Following the doctrine announced in the foregoing authorities, could it be said that if A. conveys to B. certain lands by deed, and the deed is duly recorded, but such deed comes into the hands of A., who refuses to deliver the deed to B., that B. is damaged to the extent of the full value of his land? The cases are analogous. Here plaintiff is still the owner of 6,000 shares of stock according to the record of the company, and their value has never changed. Wherein has he suffered aught but nominal damages? If B. purchases an automobile from A., and receives a bill of sale therefor, and then entrusts A. with the bill of sale, is not B. the owner of the automobile notwithstanding? And may he not maintain an action in replevin for its possession, and recover the same together with such damages as he may prove he has sustained by its unlawful detention? It may be the plaintiff has misconceived the nature of his cause of action against the defendant, but this question is not before this court for determination.

Numerous instructions were requested by the defendant and refused by the court, and exceptions saved, as well as to the form of certain instructions given. It will be unnecessary to consider instructions other than No. 14, which was as follows:

"If you find and believe that said certificate of $6,000 of stock in the Osage Oil & Refining Company was issued by said corporation and delivered to said Earl Gormley, and that the same was thereafter redelivered by him to J. E. Whitehead, and that he instructed the said J. E. Whitehead to make an arrangement with the First National Bank in order that the stock of plaintiff and that of the said J. E. Whitehead and others were to be deposited with the said bank under any special arrangement that might be made by the said J. E. Whitehead with the said bank, and that the said Earl Gormley gave no instructions whatever to the bank as to the redelivery of the same, then the redelivery of the said stock to J. E. Whitehead would not constitute conversion by any of said defendants, and if you further believe that the said J. E. Whitehead retained said stock as the president of said Osage Oil & Refining Company, the title, if any, of the plaintiff to said

certificate of stock has not been affected by said acts and transactions, and unless you shall find from the evidence under the law as here given that plaintiff has been damaged by reason of such retention and refusal to deliver said certificate of stock to the plaintiff, then your verdict should be for the defendants unless you shall further find from the evidence that such retention was wrongful, in which event plaintiff would be entitled to recover only nominal damages, unless you shall further find from the evidence that he sustained actual damages by reason thereof, in which event you would award him such damages as the evidence shows he has sustained by reason of such wrongful retention."

The court refers to the "stock" being delivered by Gormley to Whitehead and the "stock" being delivered to the bank, and the "stock" redelivered to Whitehead by the bank. This action was not founded upon any delivery or retention of shares of stock, but on the evidence of the ownership of said shares of stock, and the giving of the instruction in this form was confusing, but the latter part of the instruction to some extent cures the defect, by instructing the jury that "unless you shall find from the evidence under the law as here given that plaintiff has been damaged by reason of such retention and refusal to deliver said 'certificate of stock' to the plaintiff, your verdict should be for the defendants."

A careful perusal of all the evidence in this case fails to disclose any competent testimony admitted or offered that in any manner tends to prove damages suffered or sustained by the plaintiff, and the following principle has been well established, to wit:

"A verdict not supported by the pleadings, the evidence, or the instructions, will be reversed." Citizens Bank v. Carey, 2 Ind. Ter. 84, 48 S. W. 1012.

In Kanotex Refining Co. v. Bonifeld, 74 Okla. 304, 183 Pac. 971, it is held:

"It is the established rule in this state that, where there is any evidence that reasonably tends to support the verdict, it will not be disturbed on appeal, but, where there is an entire failure of any evidence to support the verdict, the verdict and judgment will be set aside." Elson v. Walker, 80 Okla. 237, 195 Pac. 899; Pauls v. Casey, 18 Okla. 142, 92 Pac. 388; Gergens v. McCullum, 27 Okla. 155, 111 Pac. 208; State v. Lonewolf, 63 Okla. 166, 163 Pac. 532; Sapp v. Hartford Fire & Marine Ins. Co., 86 Okla. 87, 206 Pac. 814.

The plaintiff having alleged the certificate of stock was of the value of $6,000 on March 15, 1918, and ever since has been and now is of the value of $6,000, and there being a total absence of evidence to sustain the allegation of damages, the judgment of the trial court is reversed, and the cause remanded, with directions to grant the defendants J. E. Whitehead and Osage Oil & Refining Company a new trial.

By the Court: It is so ordered.

Note:—See under (1) 34 Cyc. p. 1405, (2) 37 C. J. p. 958 §331. (3) 14 C. J. pp. 478, 479 § 689. (4) C. J. p. 853 §2834; p. 856 §2835.