CHATZ v. MIDCO OIL CORP.

In re HOAGLAND & ALLUM CO., Inc.
No. 8679.

Circuit Court of Appeals, Seventh Circuit.
Dec. 1, 1945.

Rehearing Denied Jan. 5, 1946.

William S. Kleinman, of Chicago, Ill., for appellant.

Samuel A. Boorstin, of Tulsa, Okl., and M. K. Hobbs and Carl Hoppe, both of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff, as trustee in bankruptcy of Hoagland & Allum Co., Inc., brought this action against defendant to recover 2,000 shares of the common stock of Midco Oil Corporation, purchased from the bankrupt, but which, it is claimed, belonged to bankrupt's customers.

The case was tried by the court without a jury. The court made special findings of fact, rendered its conclusions of law thereon, and entered judgment against the plaintiff. To reverse the judgment, plaintiff appeals.

For some years prior to 1938 Hoagland & Allum Co., Inc., was engaged in the

stock brokerage business in the City of Chicago, and while engaged in that business, handled the distribution and bought and sold for its customers the shares of the capital stock of Midco Oil Corporation. Defendant is a corporation organized under the laws of the State of Delaware, with its principal office in Tulsa, Okl.

During and prior to August, 1937, bankrupt, through its officers, carried on a series of negotiations with one Roy Mead of Tulsa, Okl., with the view of having him acquire a majority of the outstanding stock of Midco. As the result of these negotiations, it was agreed that Mead would purchase as many of the shares as would constitute a majority of said stock, at $43 per share. Bankrupt notified Midco's stockholders of that fact and requested them to deposit their stock with the First National Bank and Trust Company of Tulsa, Okl., and 1,971 shares of stock were deposited with the designated depository. None of the 1,971 shares so deposited was among the 2,000 involved in this case. During this period and in some instances prior to 1937, various customers of bankrupt delivered and deposited with bankrupt, endorsed for sale, 2,000 shares of Midco stock. Thereafter, in August, 1937, one C. E. Lahman of Tulsa, Okl., at the request of Henry A. Engel, secretary-treasurer of Hoagland & Allum Co., Inc., approached Charles C. Toomey, defendant's president, and offered to sell 2,000 shares of Midco stock at $33.-50 per share. Toomey informed Lahman that Midco had not been buying any Midco stock but that he would take it up with the board of directors. The board met on August 14 and agreed to buy up to 5,500 shares at a price of between $28 and $35 per share. Toomey notified Lahman of the action of the board. August 31 Lahman called Toomey and told him that 2,000 shares of Midco would be delivered to the Fourth National Bank of Tulsa, which he could receive upon payment of $67,000, and requested Toomey to have one cashier's check for $65,000 and another for $2,000. September 3 Lahman informed Toomey the stock had been received by the Fourth National Bank. Toomey went to the bank, and after he had examined the certificates and the letters of transmittal, they were accepted, and a vice-president of the bank delivered 35 stock certificates for 2,000 shares, endorsed in blank by their registered owners, the signatures being guaranteed by the Northern Trust Company of Chicago. Fourteen of the certificates, each for 100 shares, were in the name of Henry A. Engel; two of the certificates, each for 100 shares, were in the name of Harry Culver; and the remaining 19 certificates for 400 shares were in the names of various persons. Lahman endorsed the $65,000 check and it was mailed to the Northern Trust Company, which bank had forwarded the certificates to the Fourth National Bank.

The record also reveals that the certificates endorsed in blank, representing the 2,000 shares, were, prior to September 1, 1937, and at the time of the sale, pledged by Engel to secure a loan of $49,850 made by the Northern Trust Company, and that upon receipt of the $65,000 check, that bank paid itself the amount due it and credited the balance to Engel's checking account.

The record also discloses that at the time defendant purchased the stock, it knew that Lahman was merely a broker and that the stock was coming from Hoagland & Allum Co., Inc., but defendant did not know that Hoagland & Allum Co., Inc., were without authority to sell the stock. April 14, 1938, Hoagland & Allum Co., Inc., was adjudicated a bankrupt and plaintiff was elected trustee in bankruptcy.

■ At the outset, plaintiff contends that the purchase of the stock was in violation of the Oklahoma statutes. But no claim was made before the trial court, nor was the case tried upon the theory that the purchase of the stock was in violation of the statutes, and the point is raised for the first time on this appeal. In such a situation, a reviewing court will not consider an assignment of error not called to the attention of the trial court when such matter does not concern the jurisdiction of the court. It would be unfair to hold that the trial court had erred in a matter it had not considered, Maloney v. Brandt, 7 Cir., 123 F.2d 779. If plaintiff had desired to raise such a point, he should have alleged the fact in his complaint so as to permit defendant to offer evidence and to enable the court to make a finding. Since he did not, the question may not be raised for the first time in this court. In re Waern Bldg. Corp., 7 Cir., 145 F.2d 584.

■ Plaintiff next contends that defendant's officers and directors occupied the position of trustees for defendant's stockholders and that their dealings were subject to rigorous scrutiny. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281, and Farwell v. Pyle-National Headlight Co., 289 Ill. 157, 124 N.E. 449. The argument

is, that had the trial court been mindful of the rule, it would not have made the findings it did make. With this argument we cannot agree, nor can we agree that the rule has any application in the instant case. To be sure, officers and directors of a corporation are trustees for the stockholders with respect to the business and the property of the corporation and in the management of its affairs. They cannot have or acquire any personal or pecuniary interest in conflict with their duties, but the trustee relationship does not extend to a stockholder in respect to his individual stock certificates, over which the officers have no control. Courts do not impose upon officers and directors of a corporation any fiduciary duty to its stockholders which precludes them, merely because they are officers and directors, from buying and selling the corporation's stock, Securities and Exchange Commission v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626. A director may deal with an individual stockholder and purchase his stock practically on the same terms as a stranger. Hooker v. Midland Steel Co., 215 Ill. 444, 74 N.E. 445, 106 Am.St.Rep. 170, and Bawden v. Taylor, 254 Ill. 464, 98 N.E. 941.

The law is now firmly established that a purchaser who in good faith, for value and without notice of any adverse interests, purchases a stock certificate bearing the endorsement of the registered owner endorsed in blank, acquires good title to the shares of stock represented by the certificate. United States Gypsum Co. v. Faroll, 296 Ill.App. 47, 15 N.E.2d 888, and cases cited.

We do not understand that plaintiff questions this rule. He contends, however, that the cases enunciating the rule are cases in which the courts were deciding cases under the Uniform Stock Transfer Act, and he argues that Oklahoma has no such act.

An Oklahoma Statute, 1941, Title 18, § 56 provides: " * * * shares of stock are personal property, and may be transferred by endorsement by the signature of the proprietor, * * * and delivery of the certificate; * * *." In the case of First National Bank v. Stribling, 16 Okl. 41, 86 P. 512, 516, the court speaking of the language quoted, said: "This language makes such shares of stock negotiable by endorsement and vests in the transferee a complete title to the paper transferred." See also Petty v. Knight-Petty Mercantile Co., 93 Okl. 187, 220 P. 835, 837. In the case of Litchfield v. Henson Oil Co., 53 Okl. 550, 157 P. 137, 138, L.R.A.1917A, 54, the court said: "It is well known that stock certificates of all kinds have been construed in such a way that they have become the basis of commercial transactions in all the large cities in the country, and are sold in open market the same as other securities; and, whilst they are neither in the form or character of commercial paper, they approximate it as nearly as practicable." See also Capitol Hill Undertaking Co. v. Render, 149 Okl. 132, 299 P. 854, and Render v. Capitol Hill Undertaking Co., 176 Okl. 636, 53 P.2d 251.

Plaintiff next makes the point that defendant's purchase of the stock was consummated in a surreptitious manner not in the ordinary course of business and with notice of adverse interests.

To this it will be enough to say that the court found as facts, that there was nothing in the testimony indicating that there was any imperfection in connection with the manner in which the stock was held by the Northern Trust Company, or that defendant did not act in good faith or was not a purchaser for value. The court found that the price paid was a fair price and that defendant had no notice or knowledge that the stock had been held by the bankrupt for any purpose other than sale in the regular course of business.

We have examined the record and are convinced there was substantial evidence upon which to base these findings. That being so, the findings may not be disturbed. Rules of Civil Procedure, Rule 52, 28 U.S. C.A. following section 723c.

Plaintiff, in his brief, has stressed other points. These we have considered, but since they do not change the conclusions we have reached, they need not be discussed.

The judgment of the District Court will be affirmed. It is so ordered.