First National Bank of Sulphur Springs, Texas v. J. B. Stribling, *et al.*

(Filed September 7, 1905.)

1. CORPORATION—Fraudulent Act of Officer—Right of Third Fersons. Where an officer of a corporation does an official act which constitutes a fraud upon a third person, such corporation is chargeable with notice of the transaction, although the fraud is perpetrated for his own benefit, where he also represents the corporation in the transaction. Johnston-Fife Hat Co. v. The National Bank of Guthrie 4 Okla., 17.

2. CORPORATION—Reissued Stock—Personal Property—Rights of Parties. Shares of stock in a corporation organized under the laws of the Territory of Oklahoma, are personal property, and may be transferred by endorsement and delivery of the certificate; and where such shares of stock when issued provide that they are transferrable on the books of the corporation only on surrender of the certificate, such provision is binding upon the corporation, and it cannot reissue such stock without the surrender of the original certificate to a person in whose name they stand on the books of the company, and thereby escape liability to a person who holds such stock by assignment and delivery of the same. Such reissued stock is fraudulent and void as against the rights of the bona fide holder of the original.

3. CORPORATE STOCK—Assigned as Security—Right of Assignee to Bring Action. Where corporate stock is held by assignment and delivery, as security for a debt, and the assignor thereof, being the president of the corporation issuing the same, procures a reissue of said stock to himself, and thereafter assigns such reissued stock to third persons, and by a vote of such reissued stock the corporation is reorganized under a different name, and the property and franchise rights of the corporation are sought to be invested in such reorganized company, the bona fide holder of such stock is not required to reduce his demand against his assignor to judgment before he may rightfully bring an action to have the original company re-invested with its corporate power and franchise rights.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before B. F. Burwell Trial Judge.*

*Templeton, Crosby & Dinsmore, H. H. Howard* and *Flynn & Ames,* for plaintiff in error.

*Shartel, Keaton & Wells,* for defendant in error.

Opinion of the court by

GILLETTE, J.: This was an action in equity in the district court of Oklahoma county brought by the plaintiff to have determined its right, as assignee of certain stock in the Fred Hoefer Packing Co., and by reason of its alleged ownership of such stock its right as such owner in the property and assets of said corporation, which it alleges has been in fraud of its rights transferred without consideration to the Oklahoma Packing Company, successor to said Fred Hoefer Company; the petition of the plaintiff further alleging a reissue of plaintiff's stock in the Fred Hoefer Packing Co. by said company to one J. B. Stribling, assignor of the plaintiff, without a surrender to the company of the stock assigned by Stribling to plaintiff, and afterwards an absorption of said stock and property of the Fred Hoefer Packing Co. by the Oklahoma

Packing Co.; and further that certain defendants named had by assignment of Stribling become the owners of said reissued stock in the Fred Hoefer Packing Co., and by an assignment of such stock to the Oklahoma Packing Co. had thereby become the owners of stock in the Oklahoma Packing Company to the extent of 150 per cent of the stock so assigned, and for no other consideration than such assignment, thereby securing to themselves the property and property rights of the plaintiff.

The petition setting forth such transactions is as follows:

"1.   The plaintiff is a corporation and banking association, organized and existing under the laws of the United States, and at all times herein mentioned doing business as a national bank, at Sulphur Springs, in the state of Texas.

"2.   The said Fred Hoefer Packing Company is a corporation, organized and existing under the laws of said Territory, and previously doing business at Oklahoma City in said county and Territory under its said corporate name.

"3.   The said Oklahoma Packing Company is a corporation organized and existing under the laws of said Territory, having its place of business at Oklahoma City therein.

"4.   The defendant, J. B. Stribling, being indebted to the plaintiff, on December 10, 1902, made and delivered his promissory note on that day, by the terms of which, thirty days thereafter, he promised and agreed to pay to the order of Phil H. Foscue, the principal sum of $22,756.16 with interest thereon at the rate of 12 per centum per annum until paid, and in case the same is placed in the hands of an attorney for collection, to pay an attorney fee of $250, all of which will more fully appear from a true copy of said note, which is attached to the original petition, marked "Exhibit A" and made a part hereof.

"5. The said note is due and wholly unpaid after demand; the said note was so executed and delivered as evidence of a pre-existing debt due the plaintiff from J. B. Stribling, the said Phil H. Foscue, at all times herein mentioned being the cashier of said bank, and said note being so taken for the use and benefit of plaintiff, and having since 'been endorsed to it, and of which it has at all times been the sole and exclusive owner and holder; that said note was so executed and delivered in lieu and extension of the time of payment of a debt due said bank from said Stribling on May 10, 1902, which debt was at that time evidenced by numerous promissory notes.

"6. The plaintiff says that on said May 10, 1902, and while so indebted to it, said Stribling, to secure said debt, endorsed, assigned, transferred and delivered to the plaintiff certain certificates of the capital stock of said Fred Hoefer Packing Company, of which said stock and the certificates thereof, the plaintiff at all times has had and still retains the sole and exclusive possession under stipulation, contract and agreement by the terms of which the same were so delivered in pledge and as collateral security for said debt; that at the time of such delivery said Stribling executed and delivered his certain article in writing so pledging the same, a true copy of which is attached to the original, marked "Exhibit B" and made a part hereof, and since which said time such lien and possession have been uninterrupted and absolute at all times; that 87 1-2 shares of said stock were so placed by said writing and by delivery, and the remainder thereof by actual delivery as collateral security for said indebtedness.

"7. The certificates of such stock so pledged are more particularly described as follows, true copies thereof being attached to the original petition, and made a part hereof and marked as below indicated:

"Certificate No. 13, for 10 shares, marked "C".
"Certificate No. 14, for 10 shares, marked "D".

"Certificate No. 16, for 10 shares, marked "E".

"Certificate No. 30, for 10 shares, marked "F".

"Certificate No. 31, for 10 shares, marked "G".

"Certificate No. 32, for 5 shares, marked "H".

"Certificate No. 39, for 10 shares, marked "I".

"Certificate No. 40, for 10 shares, marked "J".

"Certificate No. 41, for 10 shares, marked "K".

"Certificate No. 45, for 10 shares, marked "L".

"Certificate No. 46, for 6 shares, marked "M".

"Certificate No. 52, for 10 shares, marked "N".

"Certificate No. 53, for 10 shares, marked "O".

"Certificate No. 54, for 14 shares, marked "P".

"8. The plaintiff says that the capital stock of said Fred Hoefer Packing Company is $20,000.00, divided into 200 shares of $100 each; that the shares so pledged are 135 in number, amounting, at par value to $13,500.00; that the said Oklahoma Packing Company has been incorporated since said stock was so pledged, and has a capital stock of $30,000-.00, divided into 300 shares of $100 each; that the same was designed and intended as a reorganization of said Fred Hoefer Packing Company with an increased capital; that the plaintiff had no notice or knowledge of such reorganization, and did not participate or have opportunity to do so, therein; that when said Oklahoma Packing Company was organized, there was issued of the stock thereof and delivered to the persons claiming, appearing or purporting to hold stock in said Fred Hoefer Packing Company, and the amount so delivered to each person was fifty per centum greater than the amount appearing to be held by him in said Fred Hoefer Packing Company; that under such arrangement the plaintiff would be entitled to 202.5 shares of the capital stock of said Oklahoma Packing Company, and to a lien thereon for its said debt, or to have said stock cancelled and such reorganization annulled.

"9. The plaintiff says further, that in pursuance of said plan for reorganization, said Fred Hoefer Packing Company made a pretended conveyance to said Oklahoma Packing Com-

pany of all its property of every character, which was wholly without consideration; that the whole of said plan of reorganization and transfer of property and issue and delivery of stock was without the consent or knowledge of plaintiff and without the surrender or cancellation of any of the said stock so held by plaintiff, which was a majority of all the said stock of said Fred Hoefer Packing Company; and was and is fraudulent, null and void as against the plaintiff; that the security of plaintiff is insufficient to pay said debt.

"10. The plaintiff says further that after it became the holder of said stock as above set forth, and while so holding the same, the said H. M. Donnelly, R. H. Wilkin, R. H. Hardner, Myron R. Sturtevant and E. G. Sparrow became the purchasers thereof; that they became and still are the owners thereof, subject to the lien of plaintiff; that their rights thereto are subject to the lien of plaintiff; that they hold and claim to own the proportionate amount of the stock of said Oklahoma Packing Company issued in lieu thereof; and that their rights therein are subject to the lien and rights of plaintiff; that they acquired such stock without the surrender or cancellation of said stock so held by plaintiff, by fraud and conspiracy of the officers of said corporation, and with the assistance and knowledge of said corporation and their officers, and against the rights of plaintiff; and the said Oklahoma Packing Company, its officers and stock holders, are holding, using, disposing of and controlling all the property of said Fred Hoefer Packing Company, and thus impairing, converting and disposing of the security of plaintiff, to its loss and damages, which is irreparable for the reason that said Oklahoma Packing Company is insolvent and irresponsible, and has no property other than the property of said Fred Hoefer Packing Company, so acquired without consideration, and against the rights of plaintiff.

"11. The plaintiff says further, that the said defendant, J. B. Stribling, was president of the said Fred Hoefer Packing Company; that after said stock had been hypothecated to

plaintiff, and while the certificates thereof were in plaintiff's possession and subject to its control, the said Stribling, while president of said corporation had new certificates therefor issued to himself, but that the original certificates at said time and at all times herein mentioned, were in plaintiff's possession as aforesaid, and were not surrendered at the time of the reissue of the new certificates or at any other time; that the books of said corporation showed that said stock held by plaintiff was not surrendered at the time of said reissue; that said corporation required said Stribling to execute an indemnity bond before reissuing said new or substitute certificates, and that the defendants herein at the time they acquired their respective interests, had notice that the certificates held by plaintiff were outstanding and had never been surrendered, and were not in possession by or subject to the control of said Stribling, and that the certificates they acquired were issued in lieu thereof, and on account of said bond, and while said certificates were held by plaintiff. That the stock in which they acquired an interest was never transferred from this plaintiff or on the books of said corporation. Plaintiff has demanded of said corporation the transfer of its stock on the books of said corporation, but said corporation has refused to make said transfer, and to recognize the rights of said plaintiff to the same or to any part thereof.

"12. The plaintiff says further, that said security is insufficient at par value or a premium to pay its said debt; that unless the status thereof is settled it will be greatly depreciated when sold on the market; that to invest it with its greatest value it is necessary to reinvest said Fred Hoefer Packing Company with all its property; that plaintiff does not know and is unable to give a description of such property; that such property is likely to be dissipated, lost and wasted, and the security of the plaintiff further impaired, if left in the possession of the defendants, and particularly said Oklahoma Packing Company, which has paid no consideration therefor; that said J. B. Stribling is insolvent, as also said Oklahoma

Packing Company, which has no property other than that so acquired without consideration from said Fred Hoefer Packing Company.

"Wherefore, the plaintiff prays that a lien in its favor for said sum so due it, to wit: $22,756.16, with interest at 10 per centum° per annum since December 10, 1902, may be decreed upon and against said stock; that the transfer of all the property of said Fred Hoefer Packing Company to said Oklahoma Packing Company may be decreed a fraud against the rights of plaintiff, and said Fred Hoefer Packing Company reinvested with such property; that the status of plaintiff's said security be fully established and its lien decreed superior to the rights of all and each of the defendants; that said stock be sold under the order of the court and the proceeds applied to the payment of said debt, and for costs, and that a receiver be appointed to take care of and preserve said property until the rights of the parties hereto are adjusted and determined, and all proper relief in the premises."

To the petition the following demurrer was filed:

"Territory of Oklahoma, County of Oklahoma, ss. In the District Court.

"*First National Bank of Sulphur Springs, Plaintiff, v. J. B. Stribling, H. M. Donnelly, R. H. Wilkin, R. H. Gardner Myron R. Sturtevant, E. F. Sparrow, Fred Hoefer Packing Co, Defendants.*

"Separate Demurrer to the Petition

by

"Defendants Donnelly, Wilkin, Sturtevant, Sparrow and Oklahoma Packing Co.

"Comes now the defendants, H. M. Donnelly, R. H. Wilkin, Myron R. Sturtevant, E. F. Sparrow and Oklahoma Packing Co., and, for their separate demurrer to the petition

of plaintiff, allege that it appears upon the face of said petition that:

First, there is a defect of parties plaintiff; second, there is a defect of parties defendant; third, plaintiff is not the real party in interest; fourth, said petition does not state facts sufficient to constitute a cause of action against these defendants or any one or more of them."

The case was tried in the district court upon this demurrer, resulting in a judgment dismissing such petition and the case comes to this court upon error alleged in the court below by its order sustaining such demurrer and dismissing said petition.

We have considered the case upon the points and in the order presented by the briefs of counsel.

The allegations contained in the 9th, 10th, 11th and 12th clauses of the petition being all taken as true, disclose the character of this transaction on the part of the defendants in a way that cannot be misunderstood.

The contention between the parties on the first ground stated in the briefs is, we think, well stated by the defendants in error as follows:

"An examination of the petition of plaintiff below discloses that there is no allegation contained therein to the effect that the Fred Hoefer Packing Company or its proper officers, had notice of the fact that the certificates of stock described in said petition had been pledged by defendant Stribling to plaintiff or any of its officers, and without such an allegation the law is well settled that, under a statutory provision similar to ours, this corporation cannot be held liable for issuing new certificates of stock in lieu of this alleged to have been so pledged, or for registering a subsequent transfer."

This declaration is made by counsel for defendant in error, on behalf of the Fred Hoefer Packing Co., and in support of the foregoing declaration the following statement is made:

"Stribling's knowledge of the fact of his pledging the shares of stock to plaintiff, or one of its officers, cannot be imputed to the corporation, although he was president thereof."

The contrary of this proposition is maintained by the plaintiff in error. The foundation of this contention is found in sec. 945 of the 1893 statutes of Oklahoma, as follows:

"All corporations for profit must issue certificates of stock when fully paid up, signed by the president and secretary, and may provide in their by-laws for issuing certificates prior to the full payment, under such restrictions and for such purpose as their by-laws may provide. Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock are personal property, and may be transferred by endorsement by the signature of the proprietor or his attorney or legal representative, and delivery of the certificate; but such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties, by and to whom transferred, the number or designation of the shares, and the date of transfer."

Counsel for defendants in support of their contention cite 25 La. 413, as follows:

"As the stock was only transferable on the books of the company and surrender of the certificate, this was not sufficient protection to the corporation in issuing new stock in lieu of that claimed to be lost or stolen."

Under the status of this case, however, we do not think the question is before us upon this proposition, as it is not shown by the petition or any pleadings now under consideration, that the stock in question was reissued because of a claim that the original was either lost or destroyed. The reverse of this is, in fact, admitted by the demurrer. But it is asserted that the company had a right to reissue the stock upon the demand of one shown by the books of the corporation to be the owner thereof, and so acting, will be protected unless it issued the stock with notice of the fact that it was outstanding in the hands of an assignee. And it is urged in this case that the knowledge of Stribling, who was the apparent owner of the stock on the books of the company was not the knowledge of the company, of the fact that the stock had been previously transferred to the plaintiff.

We are of the opinion that this proposition cannot rightfully be maintained in this case. The stock in question was a majority of the stock of the corporation, and while Stribling as president of the corporation in asking its reissue was acting in his individual capacity and his knowledge as such individual was not the knowledge of the company, yet the stock could not be reissued to himself without his own official act as president in so reissuing it. The act of the president in issuing or reissuing the stock of a corporation, is the act of the corporation, and his knowledge is the corporation's knowledge, and where such official act is performed with knowledge that it was fraudulent as to the rights of *bona fide* holders of the stock it must be held to be void, and the stock so reissued to himself was void in his hands as against the plaintiff in this case, whom he knew at the time to be the *bona fide* holder

thereof. See 3d. Clark & Marshall on Private Corporations, p. 2195, where it is stated that:

"As a rule a corporation is not chargeable with notice of facts because of a knowledge on the part of an officer or agent, while the latter is dealing with the corporation in his own interest, or where, for any other reason, his interest in the matter is adverse to that of the corporation so that communication by him of the knowledge cannot be presumed. But by the weight of authority when an officer of a corporation does an act which constitutes a fraud upon a third person, or upon another corporation, of which he is also an officer, the first mentioned corporation is chargeable with notice of the nature of the transaction, although the fraud is perpetrated for his own benefit, where he also represents the corporation in the transaction."

And on page 2214 of the authority, the same author, quoting from *Atlantic Cotton Mills v. Indian Orchard Mills*, 187 Mass. 268, says:

"Where the treasurer of a corporation paid his deficit to it by drawing checks upon another corporation, of which he was also treasurer, no other officer of either corporation having knowledge of the true nature of the transaction, when it occurred, it was held that knowledge of the treasurer was imputable to the corporation receiving the check, as he represented it in the transaction; and the receipt of the check was therefore treated as wrongful, and as imposing a liability on the corporation to repay the amount to the other corporation."

If, as we have here concluded, the reissued stock in the Fred Hoefer Packing Co. was void as to the plaintiff when reissued to Stribling, it was equally void as to his assignees, viz: Donnelly, Wilkins, Sturtevant and Sparrow, and ultimately as to the Oklahoma Packing Co., through an assignment by said defendants.

But we are not content to allow this determination to rest wholly upon the proposition that Stribling's knowledge of the fraud was equally the knowledge of the corporation, for we think that the corporation could not be wholly absolved from liability to the plaintiff if it was not bound by Stribling's knowledge in the premises. Under the terms of its certificate and the provisions of the statute above quoted a reissue of its stock could only be made, as a voluntary act, upon the surrender of the original stock.

The language of our statute: "But such transfer is not valid except between the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by and to whom transferred, the number or designation of the shares and the date of transfer" must be considered in connection with the other provision: "Such shares of stock are personal property and may be transferred by endorsement."

This language makes such shares of stock negotiable by endorsement and vests in the transferee a complete title to the paper transferred. No one else has any power over it or right in it. By the terms of the certificate it is transferable only on the books of the corporation, on surrender of this certificate. This is a guarantee by the corporation that it would not be transferred on its books except on surrender of the certificate.

It is true that the holder could not assert, as against the corporation, any right under it, except the right to have the transfer noted on the books of the corporation until it was so noted. But the holder is the only person who can demand such notation of transfer, and this he may do upon surrender

of the certificate, and is not limited in time to do so. Any attempt on the part of the transferrer, in this case Stribling, to secure a transfer of the stock on the books of the company in any name but that of the transferee, is an attempted fraud, if successful is a fraud, and the corporation acting in violation of its agreement not to transfer, except on surrender of the certificate, must be held to be a party to it.

The bond required and taken by the company before it would consent to a reissue of the stock in no way relieves it from the consequences of its fraudulent act, but is, on the other hand, a confession that it was violating its obligation not to transfer its stock except on surrender of the certificate.

By the taking of the bond the rights of the holder of the stock to proceed against the corporation to compel a transfer of his stock on the books of the company is not limited or affected ; nor can the corporation because it has taken such bond voluntarily and reissued its stock, refuse a transfer of the original stock as was done in this case.

We think the language of the above quoted section of the statute must be held to mean that the transferee of corporate stock has a complete title as against everybody but the corporation itself, and those who have a superior right to have the corporation make the transfer to them. See Cyc. vol. 10, 598 and 599.

Such conclusions reached, it follows that the plaintiff had and has a superior right in the Fred Hoefer Packing Co., its assets and resources, to those defendants who claim under and by virtue of the stock reissued.

The assets of the Oklahoma Packing Co. are shown by the petition to be the assets of the Fred Hoefer Packing Co.

Its stock was issued in consideration of the Fred Hoefer
Packing Company's stock, a majority of which at the time
of the transfer was represented by the fraudulent reissue of
the Stribling stock.   There was, under the facts stated in this
case, no power or right in the holders of such reissued stock
to vote or authorize, on account of such stock, a reorganization
of the Fred Hoefer Packing Company under the title of the
Oklahoma Packing Company; and the Oklahoma Packing
Company so organized has no right in the property or fran-
chises of the Fred. Hoefer Packing Company thus acquired,
except subject to the rights of plaintiff.

We are cited to *Weston v. Bear River, etc. Mining Co.*,
5 Cal. 186, for a different conclusion than here reached, but
an examination of that case shows that the decision is not
governed by the provisions of the 12th section of the act of
that state concerning corporations, which is almost identical
with our own herein referred to, but the conclusion there
reached is governed by sec. 144 of the same act, which pro-
vides:

"And no transfer of stock shall be valid for any purpose
whatever, except to render the person to whom it shall be
transferred liable for the debts of the company according to
the provisions of this act, until it shall be entered therein as
required by this section, by an entry showing to and from
whom transferred."

The learned judge rendering such opinion states that the
conclusions reached are by reason of such statute.   The sub-
sequent determinations of the supreme  court of California
upon this subject have followed this early decision, and the
peculiar provisions of the statute made the basis of such de-
cision were borrowed from the state of Wisconsin, which in

First National Bank v. Stribling *et al.*

turn borrowed them from the state of Maine, and are the foundation for much of the conflict in the authorities upon this subject. 10 Cyc. 600, note 21.

In the judgment of this court the conclusion reached by the supreme court of the United States in the case of *Bank v. Lanier*, 78 U. S. 369, is peculiarly applicable to the case at bar. That court canvassing this subject says:

"The power to transfer their stock is one of the most valuable franchises conferred by congress on banking associations. Without this power it can readily be seen the value of the stock would be greatly lessened, and, obviously, whatever contributes to make the shares of stock a safe mode of investment, and easily convertible, tends to enhance their value. It is no less the interest of the share holder, than the public, that the certificate representing his stock should be in a form to secure public confidence, for without this he could not negotiate it to any advantage.

"It is in obedience to this requirement, that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form or character negotiable paper, they approximate to it as nearly as practicable. If we assume that the certificates in question are not different from those in general use by corporations, and the assumption is a safe one, it is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy with safety. He is told under the seal of the corporation, that the shareholder is entitled to so much stock which can be transferred on the books of the corporation in person or by attorney, when the certificates are surrendered, but not otherwise. This is a notification to all persons interested to know. that who ever in good faith buys the stock and produces to the

corporation the certificates, regularly assigned, with power to transfer, is entitled to have the stock transferred to him. And the notification goes further, for it assures the holder that the corporation will not transfer the stock to anyone not in possession of the certificates.

"In this state of the case Lanier and Handy made their purchase of Culver. They bought for values, without knowledge of any adverse claim, in full faith that the bank would observe its engagements, and pursued in all respects the directions given in the certificates. They were not told to give notice to the bank of their purchase, nor was there any necessity for notice, because by the rules of the bank Culver could not transfer the stock in the absence of the certificates, and these they had in their possession. It is therefore clear, in making their purchase of Culver, that they had a right to rely on the certificates as securing to them the stock which they represented. And it is equally clear that the bank, in allowing this stock to be transferred to other parties while the certificates were outstanding in the hands of *bona fide* holders, was guilty of a breach of corporate duty, and as its conduct operated to the injury of Lanier and Handy, an action will lie in their behalf to obtain satisfaction for the injury."

The determination there reached is placed upon the language of the certificate itself and is binding upon the corporation.

Following *Bank v. Lanier, supra,* the supreme court of the state of Maine in a case not governed by local statute, *Bath Savings Institute v. Sagadahoc National Bank,* 36 Atl. 996, says:

"Without the surrender of the certificate of stock a bank cannot issue another upon a transfer made by the apparent owner * * * that will deprive the real owner of his shares."

And further the same court says in the same case:

"It is said that the bank has no notice, and pays innocently, while the holder is guilty of negligence in not giving notice of his title to the shares. Not so. The holder is not required to give notice, for his certificate informs him that so long as he retains it that the shares cannot be transferred to another, and the bank has given him this assurance by its own certificate, and he may safely rely upon it."

Applying to this case the principles  enunciated in the cases above cited, we think it clearly manifest that the act of the defendant, Fred Hoefer Packing Company, and its president, J. B. Stribling, in reissuing to said Stribling the shares of stock in controversy in this case, was *ultra vires,* and the shares of stock so reissued were therefore void, and the defendants Donnelly, Wilkin, Sturtevant and Sparrow, and the Oklahoma Packing Company, took no interest in the property or assets of the Fred  Hoefer Packing Company  by virtue thereof, except subject to the rights of the plaintiff in error.

It is contended however by the defendants in error that an action of this kind and in this form does not lie until the demands of the plaintiff against Stribling have been reduced to judgment.  This would be true in ordinary cases where a creditor seeks to subject the property of his debtor, in the hands of third persons, claiming to be the owner thereof, to the satisfaction of his demand.  But that is not this case. Here the plaintiff is by assignment the owner and holder of certain shares of corporate stock amounting to a majority of the stock of the corporation, which stock is of value or without value according as the corporation retains possession of its property and exercises its franchise right.  This action in equity seeks to require that to be done, and is not an ac-

tion which seeks to subject specific property to the satisfaction of a debt.

It follows from the conclusion here reached that there was error in the ruling of the court below in sustaining the demurrer of defendants, and dismissing said cause.

The judgment of the court below is therefore reversed, and the cause remanded with directions to enter an order in said cause overruling said demurrer, and restoring said cause upon the dockets of said court for further procedure therein.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.