269 P.2d 847

LINDNER

v.

UTAH SOUTHERN OIL CO.

No. 8045.

Supreme Court of Utah.

April 26, 1954.

---

Elliott W. Evans, Salt Lake City, for appellant.

Stewart, Cannon & Hanson and Jesse R. S. Budge, Salt Lake City, for respondent.

WOLFE, Chief Justice.

The respondent, plaintiff below, from June, 1931, to June, 1951, was the bona fide owner of 1000 shares of stock in the appellant corporation, defendant below, evidenced by properly endorsed stock certificates delivered to her in the year 1931. Between 1948 and 1950, defendant declared dividends on the 1000 shares and paid them to the record owners before defendant had any notice of plaintiff's claim to the stock in question. Plaintiff sued the defendant corporation to recover these dividends.

Two hundred of these shares were issued by the corporation on December 30, 1925, to one W. S. Hallinan, and the dividends were paid to him as record owner. The lower court held that the corporation was not liable to plaintiff for the dividends paid on these two hundred shares, and this aspect of the judgment is not questioned on appeal.

The other eight hundred shares held by plaintiff were issued by the corporation on March 20, 1926, to one James H. Dalziel, who was deceased at the time the dividends were paid. Defendant, however, paid the dividends to one William Leary, who acquired the status of record owner under the following circumstances: On February 1, 1949, Leary represented to the defendant that the eight hundred shares were part of the assets of a Palmer & Company which had been purchased by him, that Dalziel had transferred the shares to Palmer & Company, that the certificates had been lost, and he (Leary) applied for the issuance of new certificates. The defendant refused, and on April 1, 1949, Leary obtained a written assignment from Agnes E. Dalziel, widow, sole heir, and acting administratrix of the estate of James H. Dalziel assigning to Leary all her right and interest in the stock.

Based on this assignment and a surety bond indemnifying the defendant against loss, new certificates were issued to Leary on May 4, 1949, and the dividends were paid thereon. The lower court held that plaintiff was entitled to judgment for $3,200, the aggregate of dividends on the eight hundred shares. Defendant appeals.

At the outset we invite attention to pertinent provisions of defendant's By-Laws, as follows:

Art. XI, Sec. 2. "Transfers of stock shall be made on the books of the corporation only by the person named in the certificate or by an at-

torney, lawfully constituted in writing, and upon surrender and cancellation of the certificate therefor."

Art. XI, Sec. 5. "Any person claiming that a certificate of stock is lost or destroyed shall make an affidavit or affirmation of that fact and advertize the same in such manner as the board of directors may require, and shall, if the board of directors so requires, give the corporation a bond of indemnity, in form and with one or more sureties satisfactory to the board . . ., whereupon a new certificate may be issued of the same tenor and for the same number of shares as the one alleged to be lost or destroyed, but always subject to the approval of the board of directors."

█ It is generally recognized that for most purposes a certificate of stock is negotiable, and bona fide holders have a right to rely upon the certificates as securing them against a reissue or transfer to other individuals. Utah Code Ann.1953, 16–3–1; Middendorf v. Kansas Power & Light Co., 166 Kan. 610, 203 P.2d 156, 7 A.L.R.2d 1235; East River Bottom Water Co. v. Dunford, 109 Utah 510, 167 P.2d 693; Rasmussen v. Sevier Valley Canal Co., 40 Utah 371, 121 P. 741. However, in situations where the corporation is immediately involved, such as the payment of dividends, a corporation without notice of transfer of the certificate may treat the record owner as the owner in fact. 18 C.J.S., Corporations, § 470, p. 1120. In this regard, Utah Code Ann.1953, 16–2–34 provides:

"Stock shall be deemed personal property. For the purpose of voting and of receiving dividends and of levying and collecting assessments and for other purposes wherein the corporation is otherwise interested the stockholder of record as shown by its books shall be treated and considered as the holder in fact and the transferee shall have no rights or claims as against the corporation until transfer thereof is made upon the books of the corporation or a new certificate is issued to him."

A similar provision is found in the Uniform Stock Transfer Act, Utah Code Ann. 1953, 16–3–3, as follows:

"Nothing in this chapter shall be construed as forbidding a corporation:
"(1) To recognize the exclusive right of a person registered on its books as the owner of shares * * *."

█ Undoubtedly the holding of the lower court that plaintiff was not entitled to recover dividends paid to W. S. Hallinan as record owner of the two hundred shares originally issued to him, accepted by plaintiff without appeal, was based on the foregoing statutes. Further in a situation where the record owner has repre-

sented to the corporation that the certificates have been lost, thereby obtaining a reissue, the corporation retains the power to pay dividends to him. The rule is stated in 12 Fletcher Cyclopedia of the Law of Private Corporations, p. 349, as follows:

> "In paying dividends to a person who appears on the books as the owner of shares, the corporation is not bound to require him to produce his certificate of stock, and his failure to produce it is not sufficient to put the corporation on inquiry and constitute constructive notice of a transfer of the stock by him. *Nor is the corporation put upon inquiry by the fact that the person appearing on the books as owner has represented that his certificate has been lost or destroyed, given bond of indemnity, and received a new certificate.*" (Italics added.)

However, plaintiff contends that a different rule applies when a third person represents that he is a transferee of the record owner and the certificates have been lost, the corporation reissues certificates to him, and pays dividends thereon. It is contended that reissuing the certificate to other than the record owner is either notice to the corporation that the outstanding share is in another person[1] or a breach of an alleged corporate guaranty as set forth in the By-Laws that transfer would only take place by surrendering the original certificate,[2] and the reissue is made at the peril of the corporation; the real owner of the stock, evidenced by a certificate, loses nothing.[3]

While plaintiff's contention may have merit under certain circumstances, in this case there is the significant fact of an assignment by the sole heir and acting administrator of the record owner submitted to the corporation by the person to whom the certificates were issued and to whom the dividends were paid. The record owner had certain property rights at the time of making the assignment.

As between the corporation and the record owner, the latter retains legal title to the stock even though the certificates have been transferred to a third person, and the rights and duties of stock ownership rest with the record owner until a transfer has been made on the books or until the corporation receives notice.[4] In the case of Russell v. Easterbrook, 71 Conn. 50, 40 A. 905, 906, the corporation sued the record owner for unpaid subscription. The record owner defended on the ground that the certificates had been transferred to a third person. The court held the record owner liable, and reasoned, as follows:

---

1. 2 Cook Corporations, § 361, p. 1053.
2. First National Bank of Sulphur Springs, Tex. v. Stribling, 16 Okl. 41, 86 P. 512. Cf. Rasmussen v. Sevier Valley Canal Co., 40 Utah 371, 121 P. 741.
3. Supply Ditch Co. v. Elliott, 10 Colo. 327, 15 P. 691.
4. Utah Code Ann., supra; 12 Fletcher Cyclopedia Corporations 329–334, § 5497.

"It is a matter of great public importance that the stock books of business corporations should at all times show who are their shareholders. * * * Whatever equitable rights may be derived from a sale of shares, accompanied by a delivery of the stock certificate with a power of attorney for their transfer, until that transfer is actually made, [on the books of the corporation] the legal title and legal rights and liabilities of the stockholder of record remain unchanged."

Logic is tortured to hold that the record owner is liable for subscriptions, calls and assessments,[5] and has the right to vote the stock, but as regards the dividends, he has no rights which may be assigned. That the record owner's rights may be assigned or transferred is substantiated by the case of Cleveland & Mahoning R. Co. v. Robbins, 35 Ohio St. 483, where in the year 1854 the defendant corporation issued stock to Voce, Perkins & Co. and shortly thereafter Voce, Perkins & Co. transferred the stock to one Fassett who held the stock without notice or transfer on the books of the corporation until his decease in the year 1863. Fassett's administrator did not discover the certificates until 1871 and the corporation was notified. In the meantime, on May 8, 1863, Voce, Perkins & Co. represented to the corporation that the certificates had

been lost and requested that the certificates be reissued directly to one O. M. Burke and one Joseph Perkins, who had purchased from Voce, Perkins & Co. its pretended title to the shares of stock. Thereafter the corporation declared dividends and paid them to O. M. Burke and Joseph Perkins on the basis of the reissued stock. The lower court held that Fassett's administrator was entitled to the value of the stock plus the dividends paid thereon. On appeal the corporation contended that it was necessary to distinguish the relationship between Fassett and Burke and Perkins on the one hand from Fassett and the corporation on the other; that as to the dividends, the corporation had the right to deal with Voce, Perkins & Co. as record owner, and could pay the dividends to them *or to their order,* i. e., O. M. Burke and Joseph Perkins; that the transfer placed O. M. Burke and Joseph Perkins in the shoes of Voce, Perkins & Co.; and that it was necessary to distinguish the liability of the corporation on the value of the stock from liability for dividends paid in good faith. The administrator contended that the corporation was trustee of the dividends for Fassett and by reissuing the stock and paying the dividends thereon, the corporation breached its trust.

The Supreme Court of Ohio, speaking through Justice White, adopted the corporation's contentions, and held that the

5. 12 Fletcher Cyclopedia Corporations, 344 § 5503.

reissue of the stock was a breach of the duty which the corporation owed to Fassett, which created a liability to replace the stock or account for its value. But as to the dividends, the court held the corporation was protected, and said:

"Voce, Perkins & Co. were the registered owners of the stock, and by failing to have the stock transferred, Fassett consented that they might vote upon the stock, and, in the absence of notice to the company that he was the holder of the certificates, he took the risk of Voce, Perkins & Co. drawing the dividends. Unlike the transfer of the stock, the surrender or production of the certificates was not necessary to draw the dividends. Until the company were notified of the transfer of the certificates to Fassett, they were warranted in paying the dividends to Voce, Perkins & Co. *or to their order*. And, by paying the dividends to Burke and Perkins, as purchasers under Voce, Perkins & Co., the company are as fully protected as if the payments had been made to Voce, Perkins & Co., directly." (Italics added.)

In Brisbane v. Delaware, L. & W. R. R. Co., 94 N.Y. 204, the defendant corporation issued stock to one Benedict in January of 1856, who shortly thereafter transferred the same to the plaintiff. Plaintiff did not notify the corporation of the transfer. In April of 1876, Benedict's administrator represented to the corporation that the certificates had been lost, and upon receiving a bond of indemnity, the corporation issued new certificates to said administrator. In July of 1876, Benedict's administrator assigned two certificates to one Lockhart, and the company paid dividends directly to Lockhart. After so doing, the corporation received notice for the first time of the plaintiff interest.

The plaintiff, who had failed to notify the corporation of his interest, sued to recover the shares of stock and the dividends paid thereon. The lower court held that the plaintiff was entitled to the shares of stock, but denied his right to the cash dividends. On appeal the plaintiff contended that the dividends were the "accretions of the original stock and belonged to its equitable owner." (A like contention is relied upon in the instant case.) The Court of Appeals of the State of New York affirmed the judgment of the lower court, stating that although the corporation was liable for the stock which had been wrongfully reissued, a different rule prevails with respect to the dividends, which were properly payable "to the person in whose name the stock stood or his legal representative." The court said:

"*Prima facie,* upon the books of the company, the administrator of Samuel Benedict was the owner of the dividends, as there was nothing to show a want of title in him, and they were only transferable upon the production and surrender of the certificate. Un-

til this was done the defendant was bound to regard him as entitled to the same and the owner thereof. *His title, as it appeared upon the books, was conclusive until impeached* or impaired by the certificate itself with a transfer, or other evidence, showing that the stock belonged to some other party. The administrator was clearly authorized to receive the dividends as the stock stood upon the books, and the *defendant was bound to pay* the same unless it had some notice of a change of the title, or of a transfer of the stock, or such knowledge or information as would put it upon inquiry as to the ownership thereof. The failure of the administrator to present the certificate was not such a notice, at the time the dividends were received. * * * The books containing the lists of the stockholders are evidence of the ownership of the stock, and a corporation is justified in being governed thereby until proof or notice. * * *

" * * * According to law the administrator was the apparent owner of and entitled to draw the dividends. The new certificate merely supplied the place of the one which was alleged to have been destroyed for the purpose of transfer and sale in accord-ance with the rules and regulations of corporations in such cases. In view of the long period of time which had elapsed since the transfer of the certificate by the original owner, and the failure to present the same to the proper officer of the company, for the purpose of obtaining a new certificate, every presumption is in favor of the good faith of the defendant's officers in the payment of the dividends in accordance with the record on the books of the company." (Italics added.)

■ Actually, in order to decide this case, careful distinctions must be drawn. As indicated by the two cases briefed above, dividends must be distinguished from stock ownership; the corporation's relation to the holder of the certificate must be distinguished from the holder's relation to the record owner,[6] and finally, the corporation's dealings with the record owner or his authorized representative must be distinguished from cases where a forgery has occurred. The latter distinction is illustrated by the case where an indorsement is forged, the corporation reissues certificates, and pays dividends thereon. In which case, the true owner is entitled to recover the dividends as well as the stock.[7]

---

6. 12 Fletcher Cyclopedia Corporations, § 5498 and § 5499, wherein it is pointed out that the assignee or transferee continues to hold legal title in trust and the actual owner may proceed against him for satisfaction of the beneficial interest.

7. 12 Fletcher on Corporations, § 5551, footnote 7.

As indicated by the foregoing cases, the fact that the corporation issued new certificates to the assignee of the administrator does not modify the property rights. If the corporation had reissued stock to the administrator upon an allegation that the certificates had been lost, the corporation would still be protected in paying dividends to the administrator;[8] if the reissued shares had been transferred, and the transferee thereafter obtained new certificates, the corporation would be protected in paying dividends to the transferee. Why then may not a corporation by the simple expedient of accepting an assignment from the record owner or his administrator, after an allegation that the certificates have been lost, issue shares directly to the assignee without the formality of reissue to the record owner, cancellation, and reissue of stock to the assignee?

The only remaining question, though not raised on appeal, is whether the corporation had notice that the original certificates issued to Dalziel were in the hands of a third person. The only possibility of notice arises from the fact that Leary advised the corporation that the certificates were part of the assets of Palmer & Company and that the certificates had been lost. The corporation insisted that an assignment be obtained from Mrs. Dalziel, acting administrator and sole heir of the record owner, before reissuance would be made. At this point, has the corporation been placed on notice that the certificates are in the possession of a third person? We think not. In the first place, the parties stipulated "that defendant had no notice of any interest of plaintiff * * *," and the lower court made a finding that "said company never at any time during said period [from the date of issuance to Dalziel in 1926 until Lindner presented her claim in 1951, during which time the certificates were reissued to Leary and dividends paid to him] had any knowledge that said stock was owned by any person other than Dalziel." Secondly, throughout the defendant's brief on appeal frequent reference was made to the fact that the corporation had no notice of any outstanding interest, and these references were never denied by the plaintiff.

Whether the corporation had notice is a dichotomous question of fact: first, whether the notice received would prompt a reasonable man to make further inquiry. If so, he will be charged with a knowledge of all the facts he might have learned by following up the line of investigation suggested with reasonable diligence.[9] It is

8. 12 Fletcher Cyclopedia Corporations, § 5504; In re Allings Estate, 186 Misc. 192, 63 N.Y.S.2d 427; Brisband v. Delaware, Lackawanna & Western R. R. Co., supra.

9. Wade on "Law of Notice," § 34; 28 Words and Phrases, Notice, p. 825; 39 Am.Jur., Notice, §§ 12–14.

doubtful under the facts of this case that the notice received would demand an inquiry, and even more questionable that an inquiry would have revealed an interest in the stock in other than Leary or Dalziel. In any event, the parties and the court have resolved this question of fact in favor of the corporation.

The judgment of the lower court concerning the dividends paid on the eight hundred shares of stock originally issued to James H. Dalziel is reversed. Costs to appellant.

McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, respectfully suggesting that the main opinion has misconceived the property rights involved here. When the dividends were declared, they belonged to the person *then* owning the shares, which in this case was the plaintiff. By statute corporations arbitrarily are protected against a claim for the dividends by the share owner, if the corporation pays the *record owner*. This statutory defense is given the corporation for most obvious reasons, one of which is the very negotiable character of stock certificates about which the main opinion speaks. At the time the dividends were declared, Dalziel was not the true, but only the record owner of the stock, and the corporation safely could have paid the dividends to him or even his estate. Why it did not do this does not appear. Why it did not issue a new certificate in Dalziel's name or that of his estate is not made to appear. At the time the dividends were declared, Dalziel had no interest in the company to sell, nor did he have a certificate to transfer. The abortive assignment by Dalziel's executrix passed nothing, which is exactly what Leary received. Leary stands in no better position as far as these dividends are concerned than would one who had stolen the certificate, forged an endorsement and filed a false affidavit. The purpose of the statute is to protect the corporation in paying dividends to the record owner, *if* the true owner is unknown, and not to protect it where third party strangers to the record make claims that are unfounded legally or factually. It is because of cases exactly like this that indemnity bonds customarily are required where claim of loss or destruction of certificates is involved. The false claim of Leary that the certificate was lost (which it was not) and that he was the owner (which he was not) cannot justify dividend payments to him under any reasonable or logical theory, when the company by the simple device of making its check payable to Dalziel record owner, alive or not, would have protected it. What became of the dividend check then would be a problem for Dalziel or his estate, either of which might be required to disgorge to the true owner of the dividends.

Leary cannot be held to be either the extended personality of the record owner here, nor his assignee, under any stretch of the imagination, since obviously he was not the record owner at the time the dividends were declared, was not the personal representative of Dalziel, and received absolutely nothing through a purported transfer that had no legal effect whatsoever.

The payment made here was obviously made by mistake, which may have given rise to a corporate claim against Leary, but certainly did not give rise to any defense against the plaintiff, who was not a party to the mistake and cannot be charged with any participation in the mistake by not requesting a transfer on the books, a right reserved to herself, to be adjusted not between her and the corporation, or Leary but between her and Dalziel.

No argument can be made that although Dalziel had no interest in the dividends, he had a right to *receive* them, which right is assignable. He had no right to receive anything. It was the right of the corporation to pay a record owner and protect itself, and such right is a statutory privilege.

Authority from elsewhere seems to agree with the writer's contention in cases like this,[1] and we ourselves have gone so far as to require a corporation to purchase an equivalent amount of stock and turn it over to the true owner in a case where a person had wrongfully inserted the name of a stranger in the blank for assignee and the corporation on the strength of such action reissued shares to the wrongful assignee, the corporation having received no other notice than the surrendered certificate with the wrong person named as assignee.[2]

Finally, it is difficult for this writer to determine how the majority opinion arrives at its result in the light of Title 16-3-17, U.C.A.1953, since under this very statute which appears to be designed to protect a corporation where a certificate is lost or stolen, the corporation is not protected under the facts of this case, and said statute seems to say just that.

WADE, J., concurs with the views expressed by HENRIOD, J.

1. Holly Sugar Corp. v. Wilson, 1937, 101 Colo. 511, 75 P.2d 149.

2. West v. Tintic Standard Mng. Co., 71 Utah 158, 263 P. 490, 56 A.L.R. 1190.